EDWARD ALLEN *et al.,* Plaintiffs-Appellants, v. THE BOARD OF TRUSTEES OF COMMUNITY COLLEGE DISTRICT No. 508 *et al.,* Defendants-Appellees.

First District (4th Division)   No. 1—93—3108

Opinion filed December 26, 1996.

Despres, Schwartz & Geoghegan, of Chicago (Leon M. Despres and Sarah Vanderwicken, of counsel), for appellants.

Pugh, Jones & Johnson, P.C., of Chicago (Walter Jones, Jr., and Jorge V. Cazares, of counsel), for appellees.

JUSTICE CERDA delivered the opinion of the court:

Plaintiffs, Edward Allen, Simeon T. Bamgbaiye, Elmer Busch, Jewel McLaurin, Charles E. Walton, and Robin E. Washington, Jr., appeal from the entry of summary judgment by the circuit court of Cook County in favor of defendants, the Board of Trustees of Community College District No. 508 (the Board); Reynaldo Glover, chairman of the Board; Nelvia Brady, chancellor of the City Colleges of Chicago; and Cook County. Plaintiffs argue that their resignations as tenured city-college teachers were involuntary and that they were not afforded due process. We affirm.

## I. Facts

Plaintiffs resigned after charges were made that they awarded grades to students who were registered but who never attended any classes. Plaintiffs' complaint alleged the violation of their constitutional rights, including wrongful discharge in violation of due process.

The following facts were established upon defendants' filing a motion for summary judgment. In 1988, defendants received a letter from a Malcolm X College student charging that an instructor attempted to extort money from students. Defendants investigated whether instructors were properly adhering to the attendance and grading procedures; instructors were required to report which students were not in attendance. The report of the investigation revealed that some of the instructors, including three of the plaintiffs, were suspected of not reporting students who did not attend classes and were also awarding grades to them. Phantom students were enrolled in classes for the 1989 spring semester but never attended class. The college administrators approved the plan to enroll persons who agreed they would never attend classes at this college.

Of the 24 faculty teachers who had phantom students enrolled in their classes, 16 truthfully reported students not attending classes while all six plaintiffs awarded passing grades to the phantom students. If an instructor does not have a sufficient number of students to teach a class, the class is closed and the instructor is not paid for teaching that class.

On March 28, 1989, plaintiffs were served with written notice that the chancellor was considering a recommendation that they be dismissed for cause. The written notice advised plaintiffs that an informal hearing would be held on March 31, 1989. The proposed charges detailed violations of school policy, including plaintiffs' certifying the attendance of the phantom students and giving them midterm grades.

The chancellor directed that the findings about plaintiffs' conduct be reported to the United States Attorney. Defendants' representatives told plaintiffs' union representatives that plaintiffs faced indictments and probable convictions under federal law; that, if convicted, plaintiffs would forfeit all their pension rights; and that plaintiffs should be told to give up their right to a hearing on the charges, resign, and accept voluntary retirement, which defendants were willing to extend in exchange for prompt resignation and retirement. Dr. Judge Watkins, Jr., vice-president of the Cook County College Teachers Union, repeated this information from defendants' representatives. Plaintiffs contend that defendants requested federal criminal action although defendants knew that plaintiffs did not commit any federal crimes because defendants were careful not to seek any federal funding based on the attendance of the sham students. Plaintiffs did not talk to defendants or to any member of the board of trustees of the college.

The union passed a resolution agreeing to provide plaintiffs legal representation for "due process purposes" only. Watkins advised plaintiffs that they should seek criminal attorneys. Watkins contacted a union attorney, Gilbert Feldman, who met with each plaintiff. Plaintiffs appeared at the scheduled hearings with Feldman and asked for rescheduling until April 4, 1989. The requests were granted.

On April 4, 1989, plaintiffs did not participate in the hearings but instead submitted letters of resignation. Plaintiffs contend that they resigned and retired as a result of the threat of federal prosecution, discharge, and loss of pensions.

The trial court granted defendants' motion for summary judgment. After the trial court denied plaintiffs' motion for reconsideration, plaintiffs filed a notice of appeal.

## II. Discussion

Plaintiffs first argue on appeal that they had a constitutional right not to be discharged without due process of law and that their resignations were involuntary because defendants, with intent to extort involuntary resignations, knowingly made the deliberate misrepresentation that plaintiffs violated criminal laws. Plaintiffs further argue that their due process rights were violated because threats caused them to be dismissed without a hearing. Defendants do not dispute that plaintiffs were entitled to due process but argue that the resignations were voluntary.

■ A motion for summary judgment is to be granted if "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact

and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 1994). The pleadings, depositions, admissions, and affidavits on file must be construed against the movant and in favor of the opponent of the motion. *Jackson Jordan, Inc. v. Leydig, Voit & Mayer* (1994), 158 Ill. 2d 240, 249, 633 N.E.2d 627. Summary judgment is a drastic means of disposing of litigation, and so the right of the moving party to obtain summary judgment must be clear and free of doubt. *Jackson*, 158 Ill. 2d at 249. Where doubt exists as to the right of summary judgment, the wiser judicial policy is to permit resolution of the dispute by a trial. *Jackson*, 158 Ill. 2d at 249.

■ Duress is measured by an objective, and not a subjective, test. *Illinois ex rel. Schoepf v. Board of Education of Morton High Schools, District 201*, 606 F. Supp. 385, 390 (N.D. Ill. 1985). Duress is a condition where one is induced by a wrongful act or threat of another to make a contract under circumstances that deprive one of the exercise of free will. *Enslen v. Village of Lombard*, 128 Ill. App. 3d 531, 533, 470 N.E.2d 1188 (1984). A resignation that is given to avoid a dismissal that has at least a *prima facie* disputed basis is not considered to be given under duress. *Enslen*, 128 Ill. App. 3d at 533 (complaint was properly dismissed under allegations that petitioner resigned under duress in response to fire chief's threats to dismiss him for inhaling nitrous oxide while on duty and to tell newspapers that petitioner was alcoholic). A resignation can be voluntary if it is submitted to avoid criminal prosecution. *Pitt v. United States*, 420 F.2d 1028, 1032-33 (Ct. Cl. 1970).

■ There was evidence that the college issued written directives to the faculty cautioning them that they must not count persons as their students unless they actually attended classes. Defendants had school records showing that plaintiffs counted the phantom persons as their students even though the persons never attended classes, and in addition, plaintiffs gave the persons passing grades. Defendants therefore presented sufficient evidence, which was not controverted, that they could prove that they had lawful grounds to discharge plaintiffs. Because defendants had a *prima facie* basis to discharge plaintiffs, their resignations given to avoid dismissal cannot be considered to have been given under duress. *Enslen*, 128 Ill. App. 3d at 533.

■ Plaintiffs claim that the college board of trustees, its chairman, and its chancellor falsely stated that plaintiffs' midterm reports listing the names of sham students had constituted federal crimes and that each plaintiff would suffer conviction, discharge, and pension forfeiture. Plaintiffs claim that because defendants did not

request federal or state funds for the sham students, defendants knew that plaintiffs could not be convicted of any federal crimes. Plaintiffs claim that because of material falsehood and threats of federal prosecution, their resignations were extorted and their due process rights were violated by defendants.

There is no evidence that defendants falsely held their belief that plaintiffs might have committed crimes and that defendants acted to deceive plaintiffs. Defendants had evidence that plaintiffs were paid for teaching students who never attended classes but nevertheless were given passing grades. Robert Eygenhuysen stated in his affidavit that one of the reasons plaintiffs gave grades to students who never attended class was to enable plaintiffs to teach classes that would have been closed because of the failure to meet the college's minimal attendance standards. But for the false certification, the instructors would not have received payment, and, therefore, they committed a crime.

In addition, defendants had the prior investigation report, which revealed the deceitful conduct on the part of several of plaintiffs that preceded the plan to enroll phantom students. The allegations of the prior report did involve the possible misuse of government funds for teaching students who never attended classes. Each instructor who falsified attendance and grade records might have committed crimes for which he or she could have been prosecuted. Defendants had a right to inform the federal authorities of all the information they had gathered regarding plaintiffs' misconduct. Defendants voiced their opinion to the teachers' union representative that criminal indictments and convictions of plaintiffs would be forthcoming. Even if defendants' belief that federal crimes were committed was incorrect, we hold that as a matter of law plaintiffs were not coerced into resigning but voluntarily resigned. Defendants had an indisputable basis for bringing dismissal proceedings, and plaintiffs were given a choice between resigning or contesting the charges.

In contrast to the employees in cases cited by plaintiffs that involved misrepresentations as to employee rights (*Scharf v. Department of the Air Force*, 710 F.2d 1572 (D.C. Cir. 1983); *Covington v. Department of Health & Human Services*, 750 F.2d 937 (D.C. Cir. 1984)), it was unreasonable for plaintiffs to rely on defendants' statements that plaintiffs violated criminal laws. Plaintiffs instead should have obtained the advice of criminal attorneys on whether their conduct possibly violated criminal laws. Furthermore, whether plaintiffs' deceitful conduct was criminal is not a matter of fact. We believe that the opinion held by defendants regarding the deceitful conduct of plaintiffs cannot be considered a misrepresentation

(*Snelten v. Schmidt Implement Co.*, 269 Ill. App. 3d 988, 996, 647 N.E.2d 1071 (1995) (one element of fraudulent misrepresentation is a false statement of material fact)).

■ Due process for a tenured public employee requires oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to present her side of the story. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 84 L. Ed. 2d 494, 506, 105 S. Ct. 1487, 1495 (1985). The *Loudermill* court pointed out the due process requirements in discharging a tenured public employee:

> "The essential requirements of due process, and all that respondents seek or the Court of Appeals required, are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. [Citation.] The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. [Citations.] To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U.S. at 546, 84 L. Ed. 2d at 506, 105 S. Ct. at 1495.

■ Plaintiffs here received written notice that the chancellor was considering a recommendation of dismissal. Plaintiffs also received a copy of the proposed charges and a bill of particulars. Plaintiffs were given the opportunity to respond at a predetermination hearing. Instead of proceeding with the hearing, plaintiffs chose to resign. As we have found that plaintiffs were not coerced into giving up the right to respond to the charges at the hearing, plaintiffs were not deprived of due process.

■ Under federal civil rights law, every "person who, under color of any statute, ordinance, regulation, custom, or usage of any State *** subjects *** any *** person *** to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C.A. § 1983 (West 1994). Governing bodies and local officials sued in their official capacities can be sued directly under section 1983 where the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted or promulgated by those whose edicts or acts may fairly be said to represent official policy. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 56 L. Ed. 2d 611, 638, 98 S. Ct. 2018, 2037-38 (1978).

■ In their complaint plaintiffs allege they were injured because

of unconstitutional policies of defendants college and its officials. Plaintiffs allege the facts that defendants enrolled sham students in their classes; the defendants threatened to discharge plaintiffs for giving grades to sham students they counted as attending classes; they knew that the college did not receive federal or state funds for these students and that no federal crimes were committed; the acts of defendants wrongfully extorted the resignations of plaintiffs; and defendants communicated false charges to the United States Attorney and made threats of conviction, discharge, and pension forfeiture.

Plaintiffs had to allege facts that, if true, show that the governmental entity deprived them of a constitutionally protected right and that the deprivation was caused by a governmental college policy or custom. *Kentucky v. Graham*, 473 U.S. 159, 166, 87 L. Ed. 2d 114, 122, 105 S. Ct. 3099, 3105 (1985). We find that plaintiffs have not alleged, nor did they show proof of, the existence of any custom or college policy or of a causal connection between such policy or custom and constitutional injuries. Nor do any of the facts alleged give rise to such a claim. We find the federal claims to be factually and legally deficient. See *Leahy v. Board of Trustees of Community College District No. 508*, 912 F.2d 917, 922 (7th Cir. 1990) (in the absence of an allegation of the existence of a municipal policy, dismissal of section 1983 claim is justified). Defendants were entitled to summary judgment.

The judgment of the trial court is affirmed.

Affirmed.

TULLY, P.J., and GREIMAN, J., concur.