BOARD OF EDUCATION OF ROUND LAKE AREA SCHOOLS, Community Unit School District No. 116, Plaintiff-Appellant, v. THE STATE BOARD OF EDUCATION *et al.*, Defendants-Appellees.

Second District No. 2—96—1230

Opinion filed September 22, 1997.

Karl R. Ottosen and Kathleen Kennedy-Luczak, both of Ottosen, Sinson, Trevarthen & Britz, Ltd., of Wheaton, for appellants.

James E. Ryan, Attorney General, of Chicago (Susan Frederick Rhodes, Assistant Attorney General, of counsel), for appellees Illinois State Board of Education and John F. Rozner.

Irving M. Friedman and Laurie M. Burgess, both of Katz, Friedman, Schur & Eagle, of Chicago, for appellee Barbara Cohn.

JUSTICE HUTCHINSON delivered the opinion of the court:

Defendant, Barbara Cohn, was discharged from her position as a school teacher by plaintiff, the Board of Education of Round Lake Area Schools, Community Unit School District No. 116 (the Board), for insubordination and abandoning her duties. After an administrative hearing, John F. Rozner, the hearing officer appointed by the Illinois State Board of Education (the State Board), found Cohn's conduct remediable, reversed her discharge, and ordered her reinstatement as a school teacher. The Board sought administrative review in the circuit court of Lake County, naming the State Board and Rozner as additional defendants. The trial court affirmed Rozner's conclusions, and plaintiff timely appealed. On appeal, plaintiff contends that Rozner's conclusions were against the manifest weight of the evidence in that (1) defendant Cohn's actions were irremediable because she was insubordinate and abandoned her duties, and (2) defendant Cohn's due process rights were not violated. We affirm.

The administrative hearing record, including Rozner's findings, reveals the following salient facts. Prior to her dismissal, defendant Cohn was a tenured teacher for Round Lake Area Community School District No. 116. She taught in the district for the last six years and has approximately 35 years' teaching experience. In August 1994 she began teaching students who were labeled as having learning disabilities.

Cohn is not a "regular" classroom teacher. Students who meet certain criteria are assigned by their regular classroom teachers to meet with Cohn for short periods during the school day. These students remained in their regular classrooms and fulfilled their reg-

ular class schedules, except when their teachers excused them to report for Cohn's instruction. On occasions when Cohn was unavailable, the students remained with their regular classroom teachers in their regular classrooms.

In spring 1994 the Board issued its school calendar for the 1994-95 school year. School sessions were scheduled to commence in August 1994 and end early in June 1995. A two-week winter break was originally scheduled to begin on December 19, 1994; a spring break was also scheduled in March.

On October 17, 1994, the Education Association of Round Lake/ IEA-NEA (the Association) went on strike. On December 11, 1994, a strike settlement was reached, and the parties ratified the settlement on December 12. As part of the settlement agreement, the school calendar was modified, eliminating the winter and spring breaks. The amended calendar was distributed to personnel on December 12.

Just prior to the ratification meeting, Jeanne Kearby, the Association's grievance chairperson, met with Mary Davis, the superintendent. Their discussion centered on how to resolve the issue of teachers who had scheduled vacations during the winter break based on the original calendar for the school year. Davis agreed to consider their requests for leave if they came to see her and gave her proper documentation. Later, Davis held a meeting with all of the principals in the district. She informed them that any requests for leaves of absence should be forwarded to her for specific approval; no principals were to approve leaves on their own.

On December 13, 1994, Cohn met with her principal, Ron Kruis, and discussed her trip scheduled for the week beginning December 19. Kruis suggested she draft a letter to Davis, which she did. Later that afternoon Kruis suggested to Cohn that she might need to provide Davis with documentation. On December 14, Cohn brought photocopies of her tickets to forward to Davis.

On December 15, Davis wrote to Cohn, stating that her leave would not be approved unless she showed "verification that booking was made prior to the school year." On December 16, Cohn submitted to Davis additional documents in support of Cohn's contention that October 3 was the date of booking. The same day, Davis wrote to Cohn, informing her that her leave request was denied because her "travel arrangements were finalized November 11, 1994," and that should Cohn continue with her plans, Davis would consider her actions insubordinate and "proper administrative discipline would follow."

Cohn prepared lesson plans to be used in her absence and called the school clerk, Donna Dayment, to arrange for a substitute teacher.

Dayment advised her that she had no authority to arrange for a substitute unless her leave was approved by Davis. Subsequently, Dayment apprised Davis of the conversation, and Davis instructed her not to arrange for a substitute.

Cohn left on Saturday, December 17, 1994, and reported back to work on December 26. On December 19, 20, and 21, neither Kruis nor Davis secured a substitute for Cohn; Davis arranged for a substitute for Cohn for the remainder of the week.

Cohn returned to work on Monday, December 26, 1994. At the request of Kruis, Cohn filled in as a substitute teacher instead of seeing her assigned students. On December 29, 1994, Cohn sent Davis further documentation showing that the booking date for her travel was October 3, 1994. On January 6, 1995, Cohn received a memorandum from Davis, stating that her leave remained unapproved and that further action would be taken.

On January 13, 1995, Cohn received a certified letter, dated January 12, 1995, from James Hult, the president of the Board. The letter contained a "Notice of Charges," charging her with insubordination and abandonment for allegedly disobeying orders from Davis and Kruis regarding her leave during the week of December 19, 1994. The letter stated that the charges would be considered before the Board on January 19, 1995, and that Cohn would be "afforded the opportunity in Closed Session to respond to the specific charges." The letter also stated that she could appear with her attorney or other representative.

Cohn showed the letter to Kearby, who advised her not to attend the meeting and that she and the Association would represent her interests. On January 19, 1995, the Board met, and after a public session, they moved to the closed session. At this time, Kearby and two other Association officials attempted to participate in the closed session on behalf of Cohn. They were precluded from doing so, however, by Hult and Robert Trevarthen, the Board's attorney, who expected Cohn to be present. Hult and Trevarthen informed the Association officials that they would not be permitted to participate in the closed session without Cohn's presence or authorization of their representation. The Board voted to dismiss Cohn. Cohn made a timely request for a hearing officer proceeding pursuant to the School Code (105 ILCS 5/1—1 *et seq.* (West 1996)).

Cohn's posttermination hearing commenced on May 18, 1995. On October 2, 1995, Rozner made the following conclusions:

> "[The Association representatives] should have ascertained the scope of the vacation problem *** before they approached [Davis]. This issue was of such significant financial impact to the individ-

ual teacher that it should have been dealt with in a formal process with a memorandum of agreement ***.

[Davis] did not reduce her so-called understanding with Kearby to writing with copies to the Association. Had that been done we wouldn't have a conflict as to the content of the agreement, or its administration.

Communication with the [p]rincipals *** was *** less than adequate***; additionally, there was no evidence that the principals communicated the so-called vacation leave policy to the teachers.

Even *** Hult[ ] was confused as to what the vacation leave policy was ***, and this was long after he *** voted to terminate Cohn.

The administration of the vacation leave policy was inconsistent. Some teachers were granted leaves, some were initially refused and then granted *** leaves ***. Others were allowed to mix personal leave days with unpaid days ***.

[Davis] *** was not available to deal with these teacher requests and interviews each day during the short period of time preceding the holiday. ***

\* \* \*

With regard to the Board hearing on January 19, 1995 there was no requirement the [sic] Cohn be present at the hearing to consider her actions, and possible dismissal. *** Nor was there a requirement that either or both of these parties had to have evidence that they were authorized by Cohn to represent her.

The three representatives *** were present in the hearing room for the purpose of representing Cohn before the Board ***. They were asked to leave by [Davis] so the Board could conduct some other personnel issues first. The three got up and left the room. *** [T]hey were not allowed to return to the Board's Executive Session. As a result the Board only heard [Davis'] version of the charges. The Board then adjourned the closed session and went back into the public session where they unanimously approved the resolution discharging Cohn.

The action of [Hult] and [Trevarthen] clearly smack[s] of union animus. They were told that the Association representatives were there to represent Cohn in this hearing. They certainly knew that these people had a right to be there but yet they were denied the opportunity to represent their member.

In the process of denying the Association the right to represent Cohn the Board also denied Cohn her due process rights.

Had they conducted a proper hearing the Board would have had the opportunity to hear: that Cohn had prepared lesson plans for the substitute teacher to use during her absence, that [Davis] had instructed [Dayment] not to arrange for a substitute for Cohn,

that [Kruis] did not call for a substitute ***, that the L.D. children remained in their regular classrooms during these days, that *** when [Davis] returned *** she was surprised that a substitute had not been secured blaming *** Kruis even though she had previously instructed [Dayment] not to respond to Cohn's request for the substitute. The Board would have found that [Kruis] and [Davis] shared the blame for not providing a substitute on those first three days of the week.

The Board would have found that Cohn was welcomed back by Kruis, and that she continued to work from the date of her return, December 26, to January 20, even filling in as a substitute fifth grade teacher, certainly evidence that she was not considered guilty of an irremedialble [sic] offense.

The Board may have concluded as I have that this was not a case of wilful defiance but rather the product of a confused set of rules, and values. ***

The Board would have found that *** at least thirty teachers were granted personal days preceding and following the Christmas and New Year holidays and were replaced by substitutes. They may have concluded that the issue of regular teachers being present in their class rooms [sic] every day during these few weeks following the resumption of the school term was not as critical as [Davis] stated.

To deprive this teacher of her job, to cause her the embarrassment of being discharged without giving her an opportunity to have a full and thorough hearing by the Board prior to discharge is an inexcusable denial of her constitutional due process rights."

Rozner ordered that Cohn be reinstated with full back pay and benefits from the date of her discharge, January 20, 1995. The Board appealed to the circuit court of Lake County, which affirmed Rozner's findings. The Board now timely appeals to this court.

■ This court has a highly circumscribed role when reviewing an administrative appeal of a circuit court order affirming the State Board. Our standard of review for a hearing officer's decision is governed by the Administrative Review Law (735 ILCS 5/3—101 *et seq.* (West 1996)). The Administrative Review Law provides that our review extends to all questions of law and fact presented by the entire record. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 88 (1992). The statute further mandates that an administrative agency's factual findings are "held to be prima facie true and correct." 735 ILCS 5/3—110 (West 1996); see also *Antonelli v. Board of Trustees of the Hillside Police Pension Board*, 287 Ill. App. 3d 348, 353 (1997); *Oregon Community Unit School District No. 220 v. Property Tax Appeal Board*, 285 Ill. App. 3d 170, 174-75 (1996).

Our role as an appellate court is to review the administrative decision, not the circuit court decision. *Denton v. Civil Service Comm'n*, 277 Ill. App. 3d 770, 773 (1996). We give no deference to the determination of the trial court when it sits in administrative review. *Pontiac Lodge No. 294 v. Department of Revenue*, 243 Ill. App. 3d 186, 192 (1993).

On review, we are prohibited from reweighing the evidence or making an independent determination of the facts. *Abrahamson*, 153 Ill. 2d at 88; *Oregon Community Unit School District No. 220*, 285 Ill. App. 3d at 175. Rather, we are limited to ascertaining whether the factual findings of the hearing officer are against the manifest weight of the evidence. *Abrahamson*, 153 Ill. 2d at 88; *Golab v. Department of Employment Security*, 281 Ill. App. 3d 108, 112 (1996). Factual findings of the State Board are against the manifest weight of the evidence only where all reasonable and unbiased persons would agree it is clearly evident the State Board erred and should have reached the opposite conclusion. See *La Salle Partners, Inc. v. Illinois Property Tax Appeal Board*, 269 Ill. App. 3d 621, 632 (1995).

■ We are not justified in reversing findings made by an administrative agency even if an opposite conclusion is reasonable or given that we might have ruled differently. *Abrahamson*, 153 Ill. 2d at 88; *Teil v. City of Chicago*, 284 Ill. App. 3d 167, 171 (1996). We may not substitute our judgment for that of the administrative agency. *Abrahamson*, 153 Ill. 2d at 88. In making our determination, we may not reevaluate the credibility of the witnesses who testified before the State Board. See *Trayling v. Board of Fire & Police Commissioners*, 273 Ill. App. 3d 1, 9 (1995). Finally, if the record contains evidence supporting the agency's decision, it should be affirmed. *Abrahamson*, 153 Ill. 2d at 88, citing *Commonwealth Edison Co. v. Property Tax Appeal Board*, 102 Ill. 2d 443, 467 (1984).

Conversely, an administrative agency's determinations of law are not accorded the same deference as its findings of fact. *Oregon Community Unit School District No. 220*, 285 Ill. App. 3d at 175, citing *Perto v. Board of Review*, 274 Ill. App. 3d 485, 490 (1995). An administrative agency's interpretation of a statute, or its finding on a question of law, is not binding on this court. *Abrahamson*, 153 Ill. 2d at 97, citing *City of Decatur v. American Federation of State, County, & Municipal Employees, Local 268*, 122 Ill. 2d 353, 361 (1988). Thus, our review of legal issues is *de novo. Du Page County Board of Review v. Property Tax Appeal Board*, 284 Ill. App. 3d 649, 653 (1996). However, substantial weight and deference will be accorded to the administrative agency in its interpretation of a particular statute. *Abrahamson*, 153 Ill. 2d at 97-98.

■ Therefore, when presented with a mixed question of law and fact, we must first determine whether the findings of fact are against the manifest weight of the evidence. *Abrahamson*, 153 Ill. 2d at 98; *Oregon Community Unit School District No. 220*, 285 Ill. App. 3d at 175. Once that determination has been made, we must engage in our own independent analysis in applying those facts to the questions of law. *Oregon Community Unit School District No. 220*, 285 Ill. App. 3d at 175-76. We have reviewed the record, including the transcript of the hearing, and determine that Rozner's findings of fact are not against the manifest weight of the evidence.

■ In the present case, the Board dismissed Cohn on a "for cause" basis. In Illinois, no school teacher in contractual continued service may be removed from employment except for cause. See 105 ILCS 5/10—22.4 (West 1996). "Cause" connotes some substantial shortcoming rendering continuance in employment detrimental to discipline and effectiveness of service; cause is something that the law and sound public opinion recognize as a good reason for the teacher to no longer occupy her or his position. *Chicago Board of Education v. Payne*, 102 Ill. App. 3d 741, 747 (1981). Section 24—12 of the School Code (105 ILCS 5/24—12 (West 1996)) dictates the circumstances under which teachers in contractual continued service may be dismissed. An adjunct of the power to dismiss a tenured teacher is the school board's corresponding duty to make the initial determination of whether the cause is remediable or grounds for dismissal. *deOliveira v. State Board of Education*, 158 Ill. App. 3d 111, 121 (1987).

■ Insubordination is grounds for dismissal of a teacher. See *Board of Education v. Harris*, 218 Ill. App. 3d 1017 (1991); *Hazel Crest Federation of Teachers, Local 2077 v. Board of Education of School District 152¹/₂*, 206 Ill. App. 3d 69 (1990). In an employment relationship, insubordination "imports a wilful or intentional disregard of the lawful and reasonable instructions of the employer." Black's Law Dictionary 801 (6th ed. 1990). It therefore follows that the instructions, or rule, of the employer must first be reasonable. Once the rule is determined to be reasonable, then it must be determined whether the breach or violation of the rule was wilful or intentional or their equivalent (*cf. Pesce v. Board of Review*, 161 Ill. App. 3d 879, 882 (1987), citing *Jackson v. Board of Review*, 105 Ill. 2d 501, 512-13 (1985)), because not every violation of a rule will be tantamount to insubordination (*cf. Caterpillar, Inc. v. Fehrenbacher*, 286 Ill. App. 3d 614, 622-23 (1997)).

■ In assessing whether a rule is reasonable, reviewing courts consider many factors, including the rule's relationship to workplace

efficiency, safety, or discipline; its clarity or precision; and the extent to which it infringes upon an employee's legally protected behavior. *Cf. Caterpillar, Inc.*, 286 Ill. App. 3d at 621-22. There must be some nexus between the rule and the employment. A rule is not reasonable unless it provides guidelines that are or should be known by the employee. *Garner v. Department of Employment Security*, 269 Ill. App. 3d 370, 375-76 (1995); *cf. McElroy v. Cook County*, 281 Ill. App. 3d 1038 (1996); *McAllister v. Board of Review*, 263 Ill. App. 3d 207 (1994). Further, warnings or disciplinary measures contemplated for violations of the rule must be both explicit and specific to the conduct for which an employee would be reprimanded. *Cf. Garner*, 269 Ill. App. 3d at 376. Logic and common sense dictate that one cannot be insubordinate for failing to follow an unreasonable rule.

■ The Board contends that the hearing officer erred in not upholding Cohn's discharge on the basis of insubordination. The Board argues that Cohn's one-week abandonment of her teaching duties amounted to insubordination. The hearing officer found, *inter alia*, that Davis' leave policy was never reduced to writing, was ineffectively, if at all, communicated to the teachers, and was inconsistently administered. The hearing officer also considered the events leading up to and after Cohn's leave of absence and concluded that "this was not a case of wilful defiance but rather the product of a confused set of rules, and values." We cannot adduce from the record any evidence of Cohn's cognizance of Davis' leave policy as Davis stated it to be, nor can we glean any evidence of explicit or specific provisions regarding discipline for violations of the leave policy.

Here, Cohn was not charged with failing to follow proper procedures. She was charged with insubordination for failing to obey a rule imposed by Davis. Since we hold, as a matter of law, that Davis' parameters of policy and procedure for taking leaves during the previously scheduled winter break do not constitute a reasonable rule, it necessarily follows that the decision of the Board finding that Cohn was insubordinate for violating the rule was erroneous. The hearing officer's finding that Cohn was not insubordinate is not against the manifest weight of the evidence.

■ The Board also argues that Cohn's conduct was irremediable. The test for determining whether conduct is irremediable was set forth by our supreme court in *Gilliland v. Board of Education of Pleasant View Consolidated School District No. 622*, 67 Ill. 2d 143 (1977), superseded by statute as stated in *Board of Education v. Harris*, 218 Ill. App. 3d 1017 (1991). In *Gilliland*, our supreme court affirmed the dismissal of a public school teacher who, for a four-year period, violated school board regulations. *Gilliland* set forth a two-

pronged test for irremediability: whether the teacher's conduct (1) has caused significant damage to students, the faculty, or the school, and (2) could not have been corrected had superiors warned the individual charged. *Gilliland*, 67 Ill. 2d at 153; see also *Board of Education of School District No. 131 v. State Board of Education*, 99 Ill. 2d 111 (1983).

In the present case, the Board was required to show that Cohn's conduct caused significant damage to students, faculty, or the school. The hearing officer, Rozner, found that Cohn was not "guilty of an [irremediable] offense." Rozner noted that Kruis welcomed back Cohn, that Cohn worked continuously until the date of her termination, and substituted for another teacher when she came back from her leave. Although not so expressly stated by Rozner, the Board apparently failed to show significant damage to the students, faculty, or the school as a result of Cohn's actions. Rozner, instead, looked at the underlying causes of confusion in determining that Cohn was not wilfully defiant. Rozner also cited to the record, which in fact discloses numerous examples of leaves taken by teachers during the winter break period and the resulting administrative action. The record further discloses that Davis' leave policy was never reduced to any type of writing or disseminated to the teachers. We do not believe that a tenured teacher who unknowingly fails to conform to a "spur-of-the-moment" oral policy reaches the level of conduct our legislature envisioned when it drafted section 10—22.4 of the School Code. We agree that the Board failed in its burden to prove damage to the school, faculty, or students.

Plaintiff must also demonstrate that defendant Cohn's conduct could not have been corrected had she been warned. Plaintiff contends that Cohn was warned a number of times by Davis, through their written exchanges, that Cohn's conduct of going on an unapproved leave would result in discipline. The hearing officer stated that the discussion between Kearby and Davis regarding leaves of absence during the winter break period occurred on December 12, 1994. The time frame at issue is roughly one week. Arguably, Cohn's actions could have been altered—theoretically, it is possible she could have canceled the trip that she had arranged more than two months earlier. However, the heart of the policy, its actual contents, was never effectively communicated to the principals and teachers. If Cohn was never informed of the actual contents of the leave policy, as Davis argued them to be, then it cannot be maintained that her conduct could have been altered to conform to those contents, given the one-week time frame involved. Therefore, the opposite conclusion is not clearly evident. We hold that the hearing officer's finding, that

Cohn was not guilty of an irremediable offense, is not against the manifest weight of the evidence.

Plaintiff's second contention on appeal states that defendant Cohn's due process rights were not violated. The hearing officer, Rozner, determined that Cohn's due process rights were violated when the Board would not allow the three Association representatives into the closed session hearing. Plaintiff argues that Cohn received her notice of the charges against her on January 13, 1995, and was afforded an opportunity to respond on January 19. Plaintiff argues that it had no duty to allow the Association representatives into the closed session meeting because they were not the subject of an employment termination. Although this issue was presented, the trial court relied on the first issue in affirming, without passing on the merits of the due process claim.

■ A tenured teacher has a property interest in continued employment that is protected by the due process clause of the fourteenth amendment. *Board of Education v. Weed*, 281 Ill. App. 3d 1010, 1018 (1996), citing *Dusanek v. Hannon*, 677 F.2d 538, 542 (7th Cir. 1982). The due process clause of the fourteenth amendment provides that life, liberty, and property cannot be deprived without due process. U.S. Const., amend. XIV. Section 2 of article I of the Illinois Constitution similarly provides that "[n]o person shall be deprived of life, liberty or property without due process of law nor be denied the equal protection of the laws." Ill. Const. 1970, art. I, § 2. Administrative proceedings are governed by the fundamental principles and requirements of due process of law. *Abrahamson*, 153 Ill. 2d at 92; *General Service Employees Union, Local 73 v. Illinois Educational Labor Relations Board*, 285 Ill. App. 3d 507, 515 (1996); *Seul's Inc. v. Illinois Liquor Control Comm'n*, 240 Ill. App. 3d 828, 833 (1993).

■ Due process for a tenured public employee requires oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity to present her side of the story. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546, 84 L. Ed. 2d 494, 506, 105 S. Ct. 1487, 1495 (1985); see also *Allen v. Board of Trustees of Community College District No. 508*, 285 Ill. App. 3d 1031, 1037 (1996). Further, in administrative proceedings, "due process is satisfied when the party concerned is provided an opportunity to be heard in an orderly proceeding which is adapted to the nature and circumstances of the dispute." *Obasi v. Department of Professional Regulation*, 266 Ill. App. 3d 693, 702 (1994).

■ On administrative review, our duty is " 'to examine the procedural methods employed at the administrative hearing, to

insure that a fair and impartial procedure was used.' " *Abrahamson*, 153 Ill. 2d at 92-93, quoting *Middleton v. Clayton*, 128 Ill. App. 3d 623, 630 (1984). A fair hearing before an administrative agency includes the opportunity to be heard, the right to cross-examine adverse witnesses, and impartiality in ruling upon the evidence. *Abrahamson*, 153 Ill. 2d at 95, citing *Goranson v. Department of Registration & Education*, 92 Ill. App. 3d 496, 501 (1980).

In *Loudermill*, a consolidation of two cases, the Supreme Court considered the pretermination process that must be given to a public employee who can be discharged only for cause. One of the discharged employees, James Loudermill, was a security guard employed by the Cleveland Board of Education. By virtue of his position, he was classified as a civil servant who could be terminated only for cause; upon discharge, he could obtain administrative review. He was subsequently discharged for dishonesty in filling out the employment application. Loudermill had no opportunity to respond to the dishonesty charge or challenge his dismissal. The board officially approved Loudermill's discharge, and he appealed.

The other discharged employee, Richard Donnelly, worked as a bus mechanic for the Parma Board of Education. He was likewise considered a public employee who could be discharged only for cause. Donnelly was terminated for failing an eye examination. He declined the invitation to retake the examination. The Civil Service Commission, to which Donnelly appealed, ordered him reinstated without back pay. He appealed the order of the Civil Service Commission.

As a threshold matter, the Supreme Court reviewed the relevant Ohio statute and determined that the statute conferred property rights in continued employment to Loudermill and Donnelly. *Loudermill*, 470 U.S. at 538-39, 84 L. Ed. 2d at 501, 105 S. Ct. at 1491. The Court then reiterated that the " 'root requirement' " of the due process clause is " 'that an individual be given an opportunity for a hearing *before* [she or] he is deprived of any significant property interest.' " (Emphasis in original.) *Loudermill*, 470 U.S. at 542, 84 L. Ed. 2d at 503-04, 105 S. Ct. at 1493, quoting *Boddie v. Connecticut*, 401 U.S. 371, 379, 28 L. Ed. 2d 113, 119, 91 S. Ct. 780, 786 (1971). Therefore, "some kind of a hearing" is required *prior* to the individual's discharge. *Loudermill*, 470 U.S. at 542, 84 L. Ed. 2d at 504, 105 S. Ct. at 1493. The *Loudermill* court next balanced the competing interests of the individual and the government, using the test set forth in *Mathews v. Eldridge*, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). The Court concluded that the employee's interests in presenting her or his side of the case and staying employed outweighed the government's interest in immediate

termination. *Loudermill*, 470 U.S. at 543-44, 84 L. Ed. 2d at 504-05, 105 S. Ct. at 1493-94. The Court further noted that providing an employee with a pretermination hearing might provide against an erroneous or impetuous termination decision. *Loudermill*, 470 U.S. at 543-44, 84 L. Ed. 2d at 504-05, 105 S. Ct. at 1493-94.

In requiring at least an informal pretermination opportunity to be heard, the *Loudermill* court stated that the opportunity need only be extensive enough to guard against a mistaken decision. *Loudermill*, 470 U.S. at 545-46, 84 L. Ed. 2d at 505-06, 105 S. Ct. 1493-94. The Court explained:

"[The pretermination hearing] should be an initial check against mistaken decisions—essentially, a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action. [Citation.]

The essential requirements of due process *** are notice and an opportunity to respond. The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. [Citation.] The tenured public employee is entitled to oral or written notice of the charges against [her or] him, an explanation of the employer's evidence, and an opportunity to present [her or] his side of the story. [Citations.] ***

Our holding rests in part on the provisions in Ohio law for a full post-termination hearing." *Loudermill*, 470 U.S. at 545-46, 84 L. Ed. 2d at 506, 105 S. Ct. at 1495.

Illinois reviewing courts have followed the *Loudermill* analysis. See *Villegas v. Board of Fire & Police Commissioners*, 167 Ill. 2d 108 (1995); *Allen v. Board of Trustees of Community College District No. 508*, 285 Ill. App. 3d 1031 (1996); *Massie v. East St. Louis School District No. 189*, 203 Ill. App. 3d 965 (1990); *Phillips v. Civil Service Comm'n*, 172 Ill. App. 3d 278 (1988); *Board of Trustees of Community College District 508 v. McKinley*, 160 Ill. App. 3d 916 (1987).

 In the present case, Rozner held that Cohn's due process rights had been violated because the Board would not allow her representatives to be present at the pretermination hearing and respond to the charges against Cohn. The Board notified Cohn of the impending action against her and offered her the opportunity to meet with the Board on January 19. Cohn spoke with her union representatives, who advised her that they would attend in her stead. However, Trevarthen and Hult would not allow them into the meeting. Rozner found that, as a result, Cohn's version of the events was not related to members of the Board.

We agree with plaintiff that a "full and thorough" hearing is not required. However, an informal pretermination opportunity to be

heard is required, and it only needs to be extensive enough to guard against a mistaken decision. See *Loudermill*, 470 U.S. at 545-46, 84 L. Ed. 2d at 505-06, 105 S. Ct. at 1493-94. Cohn was not required to be present. In examining the procedural methods employed, we cannot say that a fair and impartial procedure was used. See *Abrahamson*, 153 Ill. 2d at 92-93. In keeping with the informal nature of the hearing, as suggested in *Loudermill*, the Board should have allowed Cohn's representatives to participate at the closed session pretermination hearing. Doing so would have allowed the members to hear both sides of the story, enabling them to make an informed decision.

Because the Board's actions at the pretermination hearing were arbitrary and unreasonable, we agree with Rozner's determination that defendant Cohn's due process rights were violated at the pretermination hearing. A school board cannot simply notify a tenured teacher charged with insubordination that a pretermination hearing will be held, only then to deny her representatives entrance to that meeting without the tenured teacher's presence. This procedure is contrary to the spirit of *Loudermill*, and we decline to adopt it here.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

INGLIS and McLAREN, JJ., concur.