# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*MacDonald v. State Board of Education*, 2012 IL App (4th) 110599

---

| | |
|---|---|
| Appellate Court Caption | JAMES SCOTT MacDONALD, Plaintiff-Appellant, v. THE STATE BOARD OF EDUCATION and THE BOARD OF EDUCATION OF PAWNEE COMMUNITY UNIT SCHOOL DISTRICT NO. 11, Defendants-Appellees. |
| District & No. | Fourth District<br>Docket No. 4-11-0599 |
| Rule 23 Order filed<br>Motion to publish allowed<br>Opinion filed | February 6, 2012<br><br>March 6, 2012<br>February 6, 2012 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The dismissal of a tenured art teacher after he was rated as unsatisfactory and failed to remediate was reversed and he was ordered to be reinstated with back pay and benefits where the school board violated the procedural requirements of section 24A-5(f) of the School Code by failing to create a remediation plan within a reasonable time following the unsatisfactory evaluation, especially when plaintiff received the unsatisfactory evaluation on May 27, 2008, the remediation plan should have been developed by June 26, 2008, and implemented for a 90-day period beginning on the first day of the 2008-09 school year, but the plan was not developed and implemented until October 31, 2008. |
| Decision Under Review | Appeal from the Circuit Court of Sangamon County, No. 10-MR-351; the Hon. Patrick J. Londrigan, Judge, presiding. |

| | |
|---|---|
| Judgment | Reversed. |
| | |
| Counsel on Appeal | Ralph H. Loewenstein (argued), of Loewenstein, Hagen & Smith, P.C., of Springfield, for appellant. |
| | |
| | Everett E. Nicholas, Jr., and Susan E. Nicholas (argued), both of Robbins, Schwartz, Nicholas, Lifton & Taylor, Ltd., of Decatur, for appellee. |
| | |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion. Presiding Justice Turner and Justice Pope concurred in the judgment and opinion. |

**OPINION**

¶ 1　　Plaintiff, James Scott MacDonald, a tenured teacher employed by Pawnee Community Unit School District No. 11, was dismissed after the Board of Education of Pawnee Community School District (Board) found plaintiff failed to remediate. Plaintiff appeared before an impartial hearing officer who concluded the Board followed the proper procedures for dismissal and cause existed to dismiss plaintiff. Plaintiff appealed to the circuit court of Sangamon County. The circuit court affirmed the hearing officer's decision. This appeal followed.

¶ 2　　　　　　　　　　　　I. BACKGROUND

¶ 3　　Plaintiff was a tenured art teacher employed by the Pawnee School District (District). Plaintiff began working for the District in 1994 and received satisfactory teacher evaluation ratings until May 2008. On May 12, 2008, Judy Wilson, the junior high/high school principal, formally evaluated plaintiff. Her evaluation noted problems in instructional management, student management, attendance, and promptness. Wilson rated plaintiff as unsatisfactory and informed him of the results of the evaluation in a postobservation conference held on the last day of the school year, May 27, 2008.

¶ 4　　On June 2, 2008, Wilson sent Jeff Seiler, president of the Pawnee Education Association (PEA), a letter informing Seiler plaintiff had been rated unsatisfactory, a remediation plan would be written within 30 days of the unsatisfactory evaluation (June 26, 2008), and the plan would commence at the beginning of the 2008-09 school year. Wilson and Lyle Rigdon, the superintendent, were responsible for developing and implementing the plan.

¶ 5　　On October 22, 2008, Rigdon sent plaintiff a letter informing him a meeting would be

held on October 27, 2008, to discuss the contents of his remediation plan. The letter indicated Rigdon, Wilson, and Amy Howard, a consulting teacher, would be present at the meeting. Plaintiff was unable to attend the meeting due to previously scheduled medical appointments, and the meeting proceeded without him. At a second meeting on October 31, 2008, plaintiff was present and was provided with the remediation plan. Wilson, Rigdon, and Ralph Hennemann, a PEA representative, were also present but Amy Howard was not. Plaintiff contends the plan did not go into effect until November 21, 2008, after Wilson provided him with a revised copy of the plan.

¶ 6        On November 10, 2008, Wilson conducted an evaluation as required by section 24A-5 of the School Code (105 ILCS 5/24A-5(h) (West 2008)) (requiring "evaluations and ratings once every 30 school days for the 90 school day remediation period"). At this time, plaintiff was rated "Unsatisfactory/Satisfactory (Improving!)." On January 20, 2009, Wilson again evaluated plaintiff and rated him unsatisfactory. On February 23, 2009, Linda Cline, the grade school principal, evaluated plaintiff and rated him unsatisfactory. Finally, on March 16, 2009, Wilson again evaluated plaintiff and rated him unsatisfactory. On April 14, 2009, Wilson prepared a summation evaluation. Wilson found plaintiff did not successfully complete the remediation and found his final rating to be unsatisfactory. On April 22, 2009, the Board voted to dismiss plaintiff based on these findings.

¶ 7        Plaintiff requested a hearing before an impartial hearing officer. See 105 ILCS 5/24-12 (West 2010) (the board shall schedule a hearing before a disinterested hearing officer after receiving a request for such hearing from the dismissed teacher). James Rapp, the hearing officer, held the dismissal proceeding on January 13, 14, 15, 26, and 27, 2010. At the hearing, plaintiff made several challenges to the procedures of the school administrators in developing and carrying out his remediation plan. Plaintiff also alleged the Board lacked cause to dismiss him. The hearing officer found the school administrators complied with procedural requirements, found cause existed to dismiss plaintiff, and upheld the Board's decision to terminate plaintiff's employment.

¶ 8        In June 2011, plaintiff filed a complaint for administrative review in the circuit court of Sangamon County. See 105 ILCS 5/24-16 (West 2010) ("[t]he provisions of the Administrative Review Law *** shall apply to and govern all proceedings instituted for the judicial review of final administrative decisions of a hearing officer under [s]ection 24-12"); 735 ILCS 5/3-104 (West 2010) ("[j]urisdiction to review final administrative decisions is vested in the [c]ircuit [c]ourts"). He alleged procedural errors by the Board and argued the Board failed to prove cause to dismiss him. In a June 2011 docket entry, the trial court upheld the hearing officer's decision. Plaintiff filed a timely appeal of the trial court's final judgment. See Ill. S. Ct. R. 303(a) (eff. June 4, 2008).

¶ 9                                        II. ANALYSIS

¶ 10        On appeal, plaintiff argues (1) the Board violated section 24A-5(f) of the School Code (105 ILCS 5/24A-5(f) (West 2008)) and the District's evaluation plan by failing to develop and implement the remediation plan within 30 days of the unsatisfactory rating; (2) the Board violated section 24A-5(f) by failing to give plaintiff a 90-day remediation period and failing

to perform evaluations every 30 days within that period; (3) the Board violated section 24A-5(h) of the School Code, the administrative regulations, and the District's plan by failing to require a consulting teacher to participate in the remediation; (4) the Board violated section 24A-5(h) of the School Code, the administrative regulations, and the District's plan by failing to offer him assistance; and (5) the hearing officer's decision plaintiff failed to achieve a satisfactory rating at the end of the remediation period was clearly erroneous. We find the Board violated the procedural requirements of section 24A-5(f) by failing to create a remediation plan within a reasonable time and reverse on these grounds. We need not address the remaining issues.

¶ 11                              A. Section 24A-5 and Strict Compliance

¶ 12        On review, "we are limited to ascertaining whether the factual findings of the hearing officer are against the manifest weight of the evidence." *Board of Education v. State Board of Education*, 292 Ill. App. 3d 101, 109, 685 N.E.2d 412, 417 (1997). Before such a determination, we must first consider whether the steps and procedures required by law were taken. *Waller v. Board of Education of Century Community Unit School District No. 100*, 13 Ill. App. 3d 1056, 1058, 302 N.E.2d 190, 192 (1973). "If, upon examination of the record *** [this] court concludes that there were failures or omissions which substantially affect the rights of the party against whom the proceedings are taken, [we have] no choice but to reverse." *Waller*, 13 Ill. App. 3d at 1058, 302 N.E.2d at 192. See also *Neal v. Board of Education, School District No. 189*, 56 Ill. App. 3d 10, 14, 371 N.E.2d 869, 872 (1977) (finding "[t]he teacher tenure act is essentially procedural" and a dismissal that fails to adhere to the statutory time requirements is void).

¶ 13        Plaintiff argues the Board failed to comply with section 24A-5 of the School Code, which requires the Board to develop and implement a remediation plan within 30 days of a tenured teacher receiving an unsatisfactory rating. 105 ILCS 5/24A-5(f) (West 2008). Plaintiff received his unsatisfactory evaluation on May 27, 2008. A remediation plan should have been developed by June 26, 2008, to be implemented for a 90-day period beginning on the first day of the 2008-09 school year. This was the time frame indicated in Wilson's June 2008 letter to the PEA. However, the hearing officer found the plan was not developed and implemented until October 31, 2008. Plaintiff contends it took the Board 158 days, five times the length of time allowed by statute, to implement the plan, and he is entitled to reversal for a violation of his procedural rights. We agree.

¶ 14        The Board argues it was not required to strictly comply with the 30-day guideline outlined in section 24A-5. The Board contends any variation from the time frame is excused by the express provisions of section 24A-5, and further, any delay was not prejudicial to plaintiff. This argument was presented to, and accepted by, the hearing officer. The hearing officer was not presented with prior decisions or rulings on this issue. Consequently, in the hearing officer's interpretation of the statute, he relied on Senator Berman's legislative remarks in finding the 30-day requirement to be directive and not mandatory. The hearing officer found "the development and implementation of the remediation plan was timely" and did not prejudice plaintiff.

-4-

¶ 15    Whether plaintiff was afforded the proper procedural protections turns on the hearing officer's interpretation of section 24A-5. An administrative agency's interpretation of a statute is not binding and is subject to *de novo* review. *Board of Education*, 292 Ill. App. 3d at 109, 685 N.E.2d at 418. In interpreting a statute, the statute's language is the "most reliable indicator of legislative intent." *Buchna v. Illinois State Board of Education*, 342 Ill. App. 3d 934, 936, 795 N.E.2d 1045, 1046 (2003). However, when the answer cannot be found in the statutory language alone, it is not uncommon for courts and administrative agencies to look to remarks made during legislative hearings for guidance. The hearing officer did so in this case and found Senator Berman's remarks were "persuasive" in concluding the 30-day time period is not mandatory and the Board was timely in creating the remediation plan. The senator's comments at the legislative hearing were as follows:

> "The other point that's changed that's addressed here is that the time line that's spelled out in the remediation plan; namely that a...within thirty days after completion of the evaluation, a teacher...a teacher shall receive the remediation plan. We have said here that failure to comply with the time...with that time requirement, namely, thirty days, shall not invalidate the results of the remediation plan." 84th Ill. Gen. Assem., Senate Proceedings, June 26, 1985, at 276 (statements of Senator Berman).

The statute reads "[f]ailure to strictly comply with the time requirements contained in [s]ection 24A-5 shall not invalidate the results of the remediation plan." 105 ILCS 5/24A-5 (West 2010). The senator's remarks provide no extra insight into statutory construction, as they are nothing more than a summation of what was to be included in the final statutory text.

¶ 16    We find the plain language of the statute is the best indicator of legislative intent. We agree with the hearing officer the 30-day time requirement in section 24A-5 is directory and not mandatory and failure to strictly comply does not result in invalidation of the plan. However, we do not find a procedural violation because the Board did not "strictly comply" with the statute as the plain language indicates. Our concern lies with the Board's lack of effort to substantially comply with the time requirements of section 24A-5 or act reasonably under the circumstances.

¶ 17    Strict compliance would result in developing and implementing a remediation plan within 30 days as directed by the statute. However, we find the Board's actions could also be categorized as substantially compliant or noncompliant.

¶ 18    Under the particular circumstances of this case, we conclude the Board's actions are best characterized as noncompliant. School officials waited 158 days to develop and implement plaintiff's remediation plan. The record shows school officials knew the plan was to be created within 30 days of plaintiff receiving an unsatisfactory evaluation. On June 2, 2008, Wilson sent Seiler a letter notifying the PEA plaintiff had been rated unsatisfactory and a plan would be written within 30 days of his evaluation date. Rigdon testified he was aware of the requirement. Additionally, Jerry Harrison, plaintiff's union representative, brought the failure to meet the time requirement to Rigdon's attention during the summer and *prior* to the final development of the plan.

¶ 19    Our decision is further supported by the 30-day time requirement set forth in the District's own evaluation plan. It states "[a] teacher having an unsatisfactory rating on the

original assessment shall have a remediation plan and procedure implemented within 30 days after completion of the assessment." The District's plan uses the mandatory term "shall" when speaking of the 30-day time requirement. While the language in 24A-5 is directory and not mandatory, the Board cannot reasonably argue it did not have to adhere to the 30-day time frame considering both the School Code and its own plan directed it to do so.

¶ 20 The Board contends (1) the delay in creation of the plan was due to difficulty in finding a qualified consulting teacher to participate in the plan and should therefore be excused; and (2) the summer break accounted for part of the 158 days and plaintiff was not harmed by the delay, but rather benefitted from having additional time. We consider each in turn.

¶ 21 B. Locating a Consulting Teacher

¶ 22 The Administrative Code requires the school officials responsible for creating the remediation plan to "undertake a diligent effort to identify a consulting teacher." 23 Ill. Adm. Code 1.320(b) (2012). A diligent efforts includes

"but should not be limited to:

A) contacting qualified teachers within the district;

B) requesting the regional superintendent of schools to supply a roster of qualified consulting teachers; and

C) requesting the exclusive bargaining agent for the district to supply a roster of qualified consulting teachers." 23 Ill. Adm. Code 1.320(b)(1)(A)-(C) (2012).

School officials did not make a diligent effort in locating a consulting teacher. We reject the Board's argument its difficulty in finding a consulting teacher excuses its delay in creating the remediation plan.

¶ 23 The record shows the first attempt to locate a consulting teacher was on June 2, 2008. Wilson sent a letter to Seiler in which she asked for a recommendation for a consulting teacher. Rigdon testified he spoke with Seiler at the end of June, but Seiler was unable to assist Rigdon in obtaining a consulting teacher.

¶ 24 A second attempt to find a consulting teacher was not made until July 16, 2008, 50 days after plaintiff received an unsatisfactory evaluation, and 20 days past the 30-day time requirement for preparing a remediation plan. Rigdon sent an e-mail directed to the area superintendents in which he stated he needed a consulting teacher and asked for suggestions of possible participants. The regional superintendent was party to this e-mail. Rigdon testified he did not receive any responses to his request other than responses wishing him well in his search. However, the record shows Jill Hamilton e-mailed Rigdon on July 22, 2008, telling Rigdon a consulting teacher, Terry Doti, an art teacher from Mt. Zion, had been found. On July 23, 2008, Rigdon responded to this e-mail, stating "I will contact her when I return. We need to start thinking about how to pay her." Rigdon testified he contacted Doti but received no response. Rigdon also testified he contacted the regional office on July 17, 2008, and spoke with the assistant regional superintendent, who directed Rigdon to contact the State Board of Education (State Board) to assist him in finding a consulting teacher.

¶ 25 On July 29, 2008, Rigdon contacted the State Board to inquire about a consulting teacher.

The State Board informed Rigdon it did not have a list of consulting teachers. Rigdon testified he attended a meeting for area superintendents in August 2008 and spoke to colleagues about suggestions but "no one had anything." Almost two more months went by before another attempt was made. Wilson testified "when [Rigdon] was unsuccessful, then I did consult my colleagues to see if there was anyone who could be of assistance." Wilson admitted she made no personal attempts to find a consulting teacher until October 2008, after Rigdon was unsuccessful. The remediation plan went into effect on October 31, 2008.

¶ 26 Wilson and Rigdon did not make a diligent effort in attempting to locate a consulting teacher as they failed to perform even the minimum actions required by section 1.320 of title 23 of the Illinois Administrative Code. Of the three minimum requirements, Rigdon did request the bargaining agent to supply a roster. The record shows Rigdon only contacted one qualified consulting teacher, Terry Doti, before Wilson was able to recruit Amy Howard for the position. Further, nothing in the record shows Rigdon requested the regional superintendent to supply a roster other than including the regional superintendent in a mass e-mail he sent to all superintendents in the area asking "please let us know if you have someone who might be available." Although Rigdon testified he requested the help of the assistant regional superintendent to no avail, his actions fell short of what the Illinois Administrative Code requires. Even if the school administrators met the three minimum requirements, we still do not find they performed a diligent search as they were required to take actions beyond those specifically outlined in the Administrative Code.

¶ 27 Wilson and Rigdon's only attempt to locate someone in the first 30 days was no more than a request to the PEA to recommend someone. All later attempts were separated by weeks or months in time and were equally as passive as the first attempt. We conclude a letter, an e-mail, and a handful of conversations over a period of five months, in light of knowing a 30-day time requirement was in place, shows the Board did not act diligently in attempting to locate a consulting teacher.

¶ 28 Wilson did not get involved in the search until October 2008 after Rigdon exhausted what he believed to be all of his options. Wilson was almost immediately successful in locating a consulting teacher once she requested the assistance of her principal colleagues. Waiting until October was not diligent. We find the delay in locating a consulting teacher was due to a lack of effort on the part of the school administrators and do not excuse such delay.

¶ 29 C. Additional Time During Summer Break

¶ 30 The Board also argues its delay in creating the remediation plan should be excused because part of the 158 days included the summer break. Section 24A-5 and the District's evaluation plan both refer to 30 days, not school days. If the legislature intended to exclude summer days or other non-school days from being counted toward the 30-day time requirement, it would have made such a distinction as it did so in other sections of the statute and when it provided for the length of the remediation plan. Compare 105 ILCS 5/24A-5(f) (West 2008) ("within 30 *days* after completion of an evaluation rating a teacher as 'unsatisfactory', development and commencement by the district *** of a remediation plan"

-7-

which "shall provide for 90 *school days* of remediation within the classroom" (emphases added)), with 105 ILCS 5/24A-5(h) (West 2008) ("evaluations and ratings once every 30 *school days* for the 90 *school day* remediation period" (emphases added)).

¶ 31 The Board also argues the delay provided plaintiff additional time to address the issues set forth in his evaluation, and he therefore benefitted from it. We do not agree. Although plaintiff may have had access to his unsatisfactory evaluation, the evaluation could not have provided him with the same guidance as a remediation plan. The purpose of a remediation plan is to specifically address a teacher's deficiencies by providing a unique and specialized plan that provides a detailed explanation of how the teacher may correct those deficiencies. An unsatisfactory evaluation falls short of this criteria. Access to the evaluation did not sufficiently benefit plaintiff so as to outweigh the prejudice the delay caused him.

¶ 32 Plaintiff received his unsatisfactory evaluation on May 27, 2008. A remediation plan should have been in effect by June 26, 2008. Had such a plan been in place, plaintiff could have benefitted from the summer months as the Board suggests. Plaintiff could have used this time to attend a professional development class, rewrite his lesson plans, organize his classroom per the administration's specifications, or begin to address any other deficiencies cited in the plan. The District chose the evaluation date and should not be allowed to bypass statutory time requirements because the 30-day period happened to fall over summer months. Plaintiff had no control over the date of the anticipated plan and cannot be charged with obtaining a benefit he did not actually receive.

¶ 33 Plaintiff was permitted to begin a new school year using his same teaching methods for 2 1/2 months before he was provided with the remediation plan. Plaintiff was permitted to begin teaching in the way he taught for the 15 years prior to the unsatisfactory evaluation. If plaintiff's deficiencies were as serious as the Board contends, the Board should not have waited 158 days to write the plan. If the Board was interested in seeing plaintiff successfully remediate, it would have made a more focused effort to have the plan ready by the beginning of 2008-09 school year.

¶ 34 We conclude the Board failed to comply with the procedural requirements of section 24A-5 of the School Code. We find the Board was not diligent in its efforts to identify a qualified consulting teacher, and do not excuse its delay on this basis. The fact summer accounted for a portion of the 158 days it took the Board to create the plan does not excuse its delay. The Board's failure to comply with procedural requirements results in an invalidation of the plan and reversal of plaintiff's dismissal.

¶ 35          III. CONCLUSION

¶ 36 For the foregoing reasons, we reverse the hearing officer's decision. We order plaintiff to be reinstated with back pay and benefits.

¶ 37 Reversed.