RUSSELL COMBS, Plaintiff-Appellant, v. BOARD OF EDUCATION OF AVON CENTER SCHOOL DISTRICT No. 47 *et al.*, Defendants-Appellees.

Second District   No. 2—85—0559

Opinion filed September 29, 1986.—Rehearing denied October 30, 1986.

Richard J. Smith, of Sullivan, Smith, Hauser & Noonan, Ltd., of Waukegan, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Julia Quinn Dempsey and Susan Frederick Rhodes, Assistant Attorneys General, of Chicago, of counsel), for appellee Illinois State Board of Education.

John G. Radosevich, of Lonchar & Radosevich, of Waukegan, for other appellee.

JUSTICE UNVERZAGT delivered the opinion of the court:

Plaintiff, Russell Combs, brings this appeal from a judgment of the circuit court of Lake County upholding his discharge from his position as a tenured public school teacher. Section 24—12 of the School Code (Ill. Rev. Stat. 1983, ch. 122, par. 24—12) provides for a hearing before an independent hearing officer when the employing school board seeks the dismissal or removal of a tenured teacher. The hearing officer in Mr. Combs' case found discharge to be warranted by the evidence, and, on administrative review, the circuit court upheld his decision.

Plaintiff's arguments on appeal can be summarized as follows: (1) that his due process rights were violated because (a) section 24—12 unconstitutionally permits prehearing suspension without pay, and (b) the procedural protections outlined in section 24—12 were not followed, resulting in his prehearing termination; (2) that his dismissal is void for lack of jurisdiction because the procedures required by section 24—12 and by the rules of the Illinois State Board of Education were not followed; and (3) the hearing officer's decision was against the manifest weight of the evidence.

Plaintiff was a teacher at Avon Center School (District No. 47, Lake County) for approximately 10 years. He was formally notified on May 17, 1982, by the Avon Center school board (school board) that his performance was unsatisfactory and that if specific deficiencies, including failure to maintain discipline and to properly supervise students, were not remedied, they would result in charges and dismissal. During the school year 1982-83, Mr. Combs' class was formally observed by the school's principal, superintendent, and an independent consultant, and a number of meetings were held between the teacher and the administration. It is undisputed that Mr. Combs' class was unruly. The administration attributes the problem to plaintiff's inability to properly handle his students, while plaintiff attributes it to four particularly disruptive students (three of whom were known to have

learning disabilities), and the administration's lack of support or cooperation.

On June 7, 1983, the Avon Center board approved and served on plaintiff a formal notice of charges and dismissal and a bill of particulars. The notice stated, "You are hereby notified that you are dismissed as a teacher in Avon Center School District 47" and informed plaintiff that a hearing would be held on the charges.

Plaintiff made no request to forgo a hearing, and the Illinois State Board of Education (ISBE) provided a list of five prospective hearing officers as required by statute (Ill. Rev. Stat. 1983, ch. 122, par. 24—12). By letter dated July 5, 1983, plaintiff refused to participate in the selection process, claiming that because he had already been dismissed by the school board, the procedures mandated by section 24—12 had not been followed, and participation would act as a waiver of the due process rights section 24—12 was intended to protect. However, after being informed that the ISBE intended to proceed with the selection by appointing an officer of the school board's choice, and that the ISBE considered Combs to be an employee of the school board until the hearing officer's decision, plaintiff agreed to participate in the process. The selection was then completed and a hearing officer was appointed on August 5, 1983.

After a delay caused primarily by plaintiff's filing a motion to dismiss with the hearing officer, which was denied, the hearing was held over nine sessions from December 9, 1983, through February 7, 1984. The hearing officer received the final transcript on March 8, 1984, but did not render his decision finding that dismissal was warranted until July 5, 1984.

I

Plaintiff claims that his due process rights were violated by the procedure used to discharge him. The notice of charges and dismissal served on plaintiff on June 7, 1983, purported to dismiss him immediately, but also notified him that the school board would schedule a hearing on the charges. Additionally, section 24—12 of the School Code provides that unless a teacher elects otherwise a final decision is to be rendered by an impartial hearing officer.[1] Section 24—12 provides, in pertinent part, as follows:

---

[1]Section 24—12 was amended by Public Act 84—126, and Public Act 84—972, effective August 1, 1985, and September 25, 1985, respectively, and now provides that a hearing is required only if the teacher requests one. Ill. Rev. Stat. 1985, ch. 122, par. 24—12.

"If a dismissal or removal is sought for *** cause, *** the board must first approve a motion containing specific charges by a majority vote of all its members. Unless the teacher within 20 days requests in writing of the board that no hearing be scheduled, the board shall schedule a hearing on those charges before a disinterested hearing officer on a date no less than 30 nor more than 60 days after the enactment of the motion. *** The hearing officer shall hold a hearing and render a final decision. *** If in the opinion of the board the interests of the school require it, the board may suspend the teacher pending the hearing, but if acquitted the teacher shall not suffer the loss of any salary by reason of the suspension." (Ill. Rev. Stat. 1983, ch. 122, par. 24—12.)

The apparent inconsistency has led to considerable confusion as to plaintiff's status pending the hearing.

Plaintiff claims that the notice effectively terminated him prior to a hearing in violation of both the statute and his constitutional due process rights. The school board also initially considered the notice to be an immediate dismissal, as evidenced by correspondence between the board and the ISBE. However, it apparently reconsidered its position because, in August 1983, it suspended plaintiff without pay pending the hearing. The ISBE has consistently taken the position that plaintiff remained a school board employee until the hearing officer rendered a decision.

Plaintiff contends that if the notice was an immediate termination it did not meet the due process requirements set out by the United States Supreme Court in *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 84 L. Ed. 2d 494, 105 S. Ct. 1487.

In *Loudermill*, the court reviewed the terminations, prior to a hearing, of two Ohio public employees. Ohio law provided that they could be dismissed only for cause, thus creating a property right, and entitled them to a full post-termination hearing. (470 U.S. 532, 538, 84 L. Ed. 2d 494, 501, 105 S. Ct. 1487, 1491.) The court, balancing the interests of the employee in retaining his employment against the employer's interest in expediency, concluded that "some form of pretermination hearing" was required. 470 U.S. 532, 543-44, 84 L. Ed. 2d 494, 504, 105 S. Ct. 1487, 1494.

The Illinois School Code and the Ohio statute in *Loudermill* are not comparable, however, because, unlike the Ohio statute, section 24—12 clearly provides for a pretermination hearing. Plaintiff argues, however, that the school board discharged him prior to the hearing in violation of section 24—12, placing him in the same position as the dis-

charged Ohio employees in *Loudermill*. We disagree. Although the language of the notice caused temporary confusion as to plaintiff's status, he suffered no deprivation which would not have resulted in any event under the statute. Although the school board purported to dismiss him in June of 1983, plaintiff was paid on a 12-month calendar and continued to receive checks previously earned through August of 1983. At that time, the school board changed its position and suspended him without pay, thus eliminating any distinction between plaintiff and an employee properly suspended at the time charges are made.

Additionally, the distinction is largely semantic. Clearly, in adopting charges to dismiss and notifying the teacher and the ISBE, a school board sets the dismissal process in motion. If the teacher requests no hearing, the board need not take further action to dismiss. Rather, the tentative dismissal simply becomes an effective one. Conversely, had the hearing officer found in favor of the plaintiff, he would have been entitled to lost pay under the statute regardless of whether the school board characterized its action as a dismissal or a suspension.

Plaintiff notes that the *Loudermill* court stated that when, for safety reasons, the employee cannot be kept on the job pending the hearing, the employer's appropriate course of action is to suspend him *with pay*. Plaintiff contends that the real essence of the *Loudermill* opinion, then, is that due process requires that a public employee who can be terminated only for cause must be given an opportunity to present his viewpoint before he suffers any real deprivation. A tenured teacher suffers the same deprivation when his salary stops whether he is discharged or suspended without pay. And the later restoration of lost salary is no greater protection to him than a post-termination hearing would be. Plaintiff argues that, if section 24—12 permits this kind of prehearing deprivation, then the statute itself cannot stand in light of the *Loudermill* opinion. We cannot agree.

The *Loudermill* court did not invalidate the Ohio statute. Rather, it required some minimal, informal pretermination opportunity to be heard in addition to the post-termination hearing the statute afforded. (*Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 545-46, 84 L. Ed. 2d 494, 506, 105 S. Ct. 1487, 1495.) The court stated that the hearing "need not be elaborate" and the requirements will vary depending on a balancing of the interests involved and the character of the post-termination hearing. (470 U.S. 532, 545-46, 84 L. Ed. 2d 494, 506, 105 S. Ct. 1487, 1495. See also *Fusari v. Steinberg* (1975), 419 U.S. 379, 42 L. Ed. 2d 521, 95 S. Ct. 533; *Arnett v. Kennedy* (1974), 416 U.S. 134, 40 L. Ed. 2d 15, 94 S. Ct. 1633.) The court concluded that the *Loudermill* plaintiffs had stated a cause of action be-

cause they were not given a chance to respond. *Cleveland Board of Education v. Loudermill* (1985), 470 U.S. 532, 547-48, 84 L. Ed. 2d 494, 507, 105 S. Ct. 1487, 1496.

Here, however, the parties agree that plaintiff was afforded a last-minute opportunity to appear before the school board on June 7, 1983, the day it adopted the charges against him. The plaintiff clearly had notice prior to that date of the school board's complaints against him, as they were the subject of a notice to remedy a year earlier, and of his meetings with administrators during the school year. Considering the school board's strong interest in the expedient removal of incompetent teachers, the provision of a full evidentiary hearing, and the board's interest in avoiding the delay and expense of two hearings (see *Barszcz v. Board of Trustees* (N.D. Ill. 1975), 400 F. Supp. 675), we believe plaintiff was afforded the minimal opportunity to be heard prior to suspension without pay which he argues the *Loudermill* decision requires. Thus, even giving the *Loudermill* decision a far broader interpretation than we believe it merits, plaintiff's due process rights were not violated.

## II

Plaintiff next contends that the hearing officer's decision is void because: (1) the school board effectively dismissed him prior to a hearing in violation of section 24—12; (2) the hearing officer incorrectly perceived his role to be that of a reviewing court rather than an arbitrator; and (3) the hearing officer rendered his decision more than 30 days after the hearing in violation of ISBE rules.

## A

█ Section 24—12 provides that a final decision will be rendered by a hearing officer, and that pending the hearing, the school board may suspend a teacher. (Ill. Rev. Stat. 1983, ch. 122, par. 24—12.) Plaintiff argues that the school board, in the notice of charges and dismissal served on him on June 7, 1983, improperly discharged rather than suspended him prior to a hearing. Plaintiff claims that, because it contained an invalid discharge date, the notice was improper and the hearing officer was without jurisdiction to act upon it. We disagree.

As discussed earlier, the distinction between a suspension without pay and a tentative dismissal is purely a semantic one. In *People ex rel. Head v. Board of Education* (1981), 95 Ill. App. 3d 78, this court held that section 24—12 "must be substantially followed if a dismissal is to be valid and effective." (95 Ill. App. 3d 78, 81.) As the statute required, the notice informed the plaintiff that a hearing would be held on the

charges. The board also notified the ISBE and set the hearing process in motion. A hearing was held, and the hearing officer rendered a final decision discharging the plaintiff. Therefore, the procedures which followed plaintiff's "dismissal" were identical to what would have followed a "suspension" and were entirely consistent with what the statute required.

Plaintiff cites two cases, *Neal v. Board of Education* (1978), 56 Ill. App. 3d 10, and *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, for the proposition that an attempted discharge is void if the hearing is not held prior to the school board's date of dismissal. We find the cases entirely inapposite. Both cases dealt with an earlier version of section 24—12 which authorized the school board itself to hold a hearing and make the final decision to discharge a tenured teacher and expressly provided that the hearing must precede the effective date of dismissal provided by the board. (Ill. Rev. Stat. 1973, ch. 122, par. 24—12.) The dismissal date provided by the school board was very important under the earlier scheme because it was the date dismissal became effective and final—the date provided by the ultimate decision maker. There is no longer any great significance to a date provided by the school board both because the statute no longer expressly requires that date to follow the hearing and because final dismissal clearly occurs under the current statute only when the hearing officer renders his decision. Ill. Rev. Stat. 1983, ch. 122, par. 24—12.

B

■ Plaintiff argues that the hearing officer's decision is invalid because he misconceived his role. Plaintiff's contention is that, because the school board improperly "dismissed" him on June 7, 1983, the hearing officer believed that his function was to review that decision and either uphold or reverse it, rather than to determine in the first instance whether or not to dismiss.

Plaintiff bases his argument entirely upon the following portion of the hearing officer's decision:

"[The hearing officer] is not empowered to provide some lesser penalty than dismissal. The Board here has decided on dismissal as the appropriate penalty for a serious abuse. Were the matter before this hearing officer for determination of the penalty in the first instance he might well have selected some punishment less than discharge for the TEACHER. The statute, however, has vested the power to determine penalties for misconduct solely in the Board. It is the hearing officer's function to decide whether the Board's action was justified by the evidence and the

law."

This passage does not support the plaintiff's claim. The hearing officer accurately noted that the statute does not empower him to select a penalty less than dismissal. He presided at a discharge hearing, not a disciplinary hearing. In fact, section 24—12, authorizing the appointment of the hearing officer, is entitled "[r]emoval or dismissal of teachers in contractual continued service," and applies only when "dismissal or removal is sought." (Ill. Rev. Stat. 1983, ch. 122, par. 24—12.) Additionally, the rules adopted by the ISBE as authorized by section 24—12 require the hearing officer to decide "whether or not the teacher shall be dismissed." (23 Ill. Admin. Code 51.70(a) (1985).) The hearing officer accurately concluded that the only applicable remedy was dismissal.

The hearing officer correctly applied the preponderance-of-the-evidence standard. (See *Board of Education v. Ingels* (1979), 75 Ill. App. 3d 334.) He concluded that the evidence under that standard demonstrated that plaintiff's conduct "constituted a pattern of deficiency, so blatant," that dismissal was warranted. There is no indication that this decision is based on a finding that the school board simply had not erred. Rather, it seems clearly to be an independent finding that the evidence warrants dismissal.

## C

██ █ Section 24—12 sets no time limit by which a hearing officer must render a decision. However, ISBE rules provide that "[t]he decision should be rendered no later than 30 days from the date of closing the hearing." (23 Ill. Admin. Code 51.70(b) (1985).) Plaintiff's hearing ended on February 7, 1984, but the hearing officer did not render his decision until July 5, 1984. Plaintiff argues that the ISBE rule is mandatory and that the unexplained delay nullified the proceedings. We disagree.

Courts will use the rules applicable to statutory construction when interpreting administrative rules. (*Foley v. Civil Service Com.* (1980), 89 Ill. App. 3d 871; *Hetzer v. State Police Merit Board* (1977), 49 Ill. App. 3d 1045.) A number of cases have dealt with the construction of time limits imposed by earlier versions of section 24—12. (See, *e.g.,* *Grissom v. Board of Education* (1979), 75 Ill. 2d 314; *Szkirpan v. Board of Education* (1975), 29 Ill. App. 3d 1047; *Miller v. Board of Education* (1962), 37 Ill. App. 2d 451.) In *Szkirpan*, the court determined that the school board lost its jurisdiction because it failed to reach a decision within 80 days from the date of notice, as the School Code required. (*Szkirpan v. Board of Education* (1975), 29 Ill. App. 3d 1047, 1053.) The *Miller* court, however, concluded that failure to com-

plete the hearing in the specified time was not grounds for nullifying the proceedings. (*Miller v. Board of Education* (1962), 37 Ill. App. 2d 451, 454.) The *Grissom* court reconciled the two decisions, however, concluding that loss of jurisdiction was justified only when the governmental agency is responsible for the delay, but not when "the record is devoid of dilatory conduct by all parties." (*Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 325.) Finally, in *Board of Education v. File* (1980), 89 Ill. App. 3d 1132, the hearing officer rendered a decision without findings more than 10 months after the conclusion of the hearing. (89 Ill. App. 3d 1132, 1133.) Rather than nullify the proceedings and remand for an expensive and lengthy second hearing, the court simply remanded to the same hearing officer for findings. 89 Ill. App. 3d 1132, 1140.

We believe that these decisions indicate that it would be inappropriate to nullify the proceedings because the hearing officer did not render his decision within 30 days from the conclusion of the hearing. The record indicates that the hearing officer did not receive his copy of the transcript until March 8, 1984, by which time the 30-day period had already expired. Additionally, the transcript is over 1,500 pages long, explaining, at least in part, why the hearing officer took an additional four months to review the testimony and render a decision. Additionally, as in *Miller*, the record evidences no dilatory conduct by either party.

Plaintiff relies on *Foley v. Civil Service Com.* (1980), 89 Ill. App. 3d 871, however, in which this court invalidated the discharge of a police officer because the Civil Service Commission did not render its decision within the seven days required by its rules. *Foley* is clearly distinguishable, however, because there was no evidence that the time period was unreasonable in light of the volume of the material the commissioner had to review before rendering a decision. Additionally, in *Foley*, the commission had both promulgated the rule and failed to meet its requirements. In the instant case, however, the ISBE promulgated the rule, but it was an independent hearing officer, not an ISBE employee, who failed to meet its time constraints. Under the circumstances it would be inherently unfair to burden the ISBE and the local school board with the time and expense a second hearing would entail.

### III

■ Plaintiff's final contention is that the hearing officer's decision is against the manifest weight of the evidence. The evidence presented can briefly be summarized as follows.

The school superintendent and principal testified that they made

frequent observations of Mr. Combs' class during the 1982-83 school year and that Mr. Combs could not maintain order in his classroom. The record also indicates that they documented specific incidents, including fights between students, one of which resulted in a student requiring stitches; a disruption caused by three unsupervised students who had been sent from or had voluntarily left Mr. Combs' classroom; and a complaint from a teacher who had found two students climbing out one of the windows of Mr. Combs' classroom. The record also contains evaluations by a third observer, a teacher-consultant, who observed Mr. Combs' class on several occasions and found the class to be constantly noisy and disruptive, and that Mr. Combs' efforts to quiet them had little or no effect with the result that normal instruction could not be given.

Parents of three students in Mr. Combs' class testified that they had complained to the administration and requested that their children be transferred. They reported that the children's attitudes regarding school had deteriorated, and that they were concerned for the children's safety because of frequent fights in the classroom. Two of the parents testified that they had visited the school and observed the classroom, which was in a state of chaos, apparently caused by a small number of students.

Two teachers who shared a classroom located across the hall from Mr. Combs' testified to frequent noise and regular disorder in his class. Additionally, three substitute teachers testified. Two who only occasionally substituted stated that they had trouble maintaining order. A third, who substituted while Mr. Combs was absent during an extended illness of about two months, testified that she was able to restore the classroom, including the most disruptive students, to order after about one week. Additionally, the school's learning disabilities resource teacher testified that Mr. Combs consulted her only once, in the spring of 1983, for help in formulating a special program for a single student.

Mr. Combs' defense consisted mainly of allegations that the disorder was caused by a small number of disruptive students, three of whom had been diagnosed as having learning disabilities, and that the administration refused to support him by removing the students, preferring to document the problems to support Mr. Combs' later dismissal. His position was that the students should not have been mainstreamed into a regular classroom with a teacher who had not been trained to handle learning disabled students.

Witnesses presented by Mr. Combs included two former teachers and a parent who testified that the superintendent and principal were bent on having Mr. Combs removed. Additionally, Mr. Combs' wife tes-

tified to his out-of-class efforts to educate himself regarding discipline problems and to the time he spent preparing special programs for his students.

Charges similar to those made against Mr. Combs have been held to be of a remediable nature. (*Grissom v. Board of Education* (1979), 75 Ill. 2d 314.) However, where remediable causes "continue for a long enough period of time and where the teacher refuses or fails to remedy them, they may be considered to be irremediable." (*Szabo v. Board of Education* (1983), 117 Ill. App. 3d 869, 873.) The notice to remedy served on plaintiff in May 1982 listed the same complaints as ultimately resulted in the charges. It was clear from the testimony that the situation was not remedied over the course of the 1982-83 school year due to the teacher's refusal or inability to correct them, thus making them grounds for discharge. See Ill. Rev. Stat. 1983, ch. 122, par. 24—12; *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 327; *Yesinowski v. Board of Education* (1975), 28 Ill. App. 3d 119, 122-23; see also *Board of Education v. Ingels* (1979), 75 Ill. App. 3d 334, 336-37 (holding that a pattern of deficient behavior warrants the dismissal of a tenured teacher).

The hearing officer concluded that by a preponderance of the evidence the teacher's conduct created a blatant pattern of deficiency in maintaining discipline in the classroom. This court has consistently held that a decision is against the manifest weight of the evidence "only when the opposite conclusion is clearly evident" or the decision "appears to be unreasonable, arbitrary or not based on the evidence." (*Gabrenas v. R. D. Werner Co.* (1983), 116 Ill. App. 3d 276, 285.) The reviewing court may not substitute its judgment for that of the hearing officer. (*Board of Education v. Illinois Board of Education* (1980), 82 Ill. App. 3d 820, 823; see also *Grissom v. Board of Education* (1979), 75 Ill. 2d 314, 331, citing *Gilliland v. Board of Education* (1977), 67 Ill. 2d 143, 153.) We cannot conclude that the hearing officer's decision based on the evidence is patently unreasonable or arbitrary, and it therefore must be affirmed.

For these reasons we affirm the judgment of the circuit court of Lake County.

Judgment affirmed.

HOPF and SCHNAKE, JJ., concur.