SECOND DIVISION

March 19, 2002

No. 1-00-3720

BOARD OF EDUCATION OF COMMUNITY CONSOLIDATED SCHOOL DISTRICT NO. 54, 

Plaintiff-Appellant,

v.

RAYMOND SPANGLER and ILLINOIS STATE BOARD OF EDUCATION, 

Defendants-Appellees. 

)

)

)

)

)

)

)

)

)

)

)

Appeal from the 

Circuit Court of

Cook County.

Honorable

Ellis E. Reid, 

Judge Presiding.

PRESIDING JUSTICE BURKE delivered the opinion of the court:

Plaintiff Board of Education of Community Consolidated School District No. 54 (Board) appeals from an order of the circuit court, entered upon administrative review, confirming a hearing officer's reversal of the Board's decision to dismiss defendant Raymond Spangler, a tenured teacher, based on his failure to achieve a satisfactory rating after a one-year remediation plan conducted pursuant to section 24A-5(f) of the School Code (Code) (105 ILCS 5-24A-5(f) (West 1998)).  On appeal, the Board contends that the hearing officer's decision was contrary to law and against the manifest weight of the evidence.  For the reasons set forth below, we affirm.  

STATEMENT OF FACTS

Raymond Spangler was employed as a tenured fifth grade teacher by the Board at Link Elementary School in Elk Grove Village, a part of the Schaumburg School District.  Spangler had been evaluated on his performance over the years and had received satisfactory ratings.  On October 2, 1996, Dr. Bruce Brown, the principal of Link Elementary, wrote a letter to Spangler with respect to five visits Brown had made to Spangler's classroom during the month of September.  Brown noted a consistent pattern of interaction with the class that needed immediate attention.  He also criticized Spangler's lesson organization, instructional planning, classroom management, instruction method, and advised Spangler that he needed to address the individual needs of students and provide them with feedback.  Spangler was advised that if he failed to show improvement, it might result in an unsatisfactory rating.

Subsequent to this letter, Brown completed Spangler's evaluation for the 1996-97 school year.  Brown's April 30, 1997, summative evaluation report noted that he had observed Spangler's classroom on 10 occasions over the course of the preceding year, 2 of them prearranged.  Brown stated that the following areas of Spangler's performance needed improvement: instruction method, lesson planning and organization, concept of lesson directions, and pacing.  Brown rated defendant unsatisfactory.  

Because of the unsatisfactory rating, a remediation plan was adopted to cover the period from June 1, 1997, to May 1, 1998.  The plan cited 11 areas of weakness in Spangler's performance, which he was required to improve: failure to present instruction that corresponded to presented lesson plans; failure to communicate instructional goals and objectives to the students during instruction; failure to structure lessons and include opening and closing comments; failure to assign homework; failure to provide adequate feedback to the students with respect to their work; failure to deviate from "whole class, teacher-led" instruction model; failure to stress active participation by all students during instruction; failure to show little modification in lessons or assignments to meet the individual needs of students; failure to identify inattentive students and develop an engagement strategy; failure to appropriately pace lessons, some being over 90 minutes long; and failure to adequately display current student work.  It concluded with a statement that Spangler's overall performance had been rated unsatisfactory.

During the remediation period, Spangler was observed and evaluated by Dr. Brown and Marianne Zito, the assistant superintendent for instruction.  During the first quarter, Brown observed Spangler on nine occasions, one being prearranged.  In his summative evaluation report dated October 17, 1997, after detailing his observation results, Brown noted that the pattern of concerns in the remediation plan remained largely unaddressed by Spangler.  Accordingly, Brown gave Spangler an unsatisfactory rating on his current progress.  During the second quarter, Brown observed Spangler eight times, one being prearranged.  In his summative evaluation report dated January 30, 1998, Brown again stated that the patterns of concern of the remediation plan were unaddressed and rated Spangler's performance unsatisfactory.  During the third quarter, Brown observed Spangler six times, one prearranged.  Brown's conclusion in his summative evaluation report dated March 23, 1998, was the same.  During the last quarter, Spangler was observed six times by Brown and at least twice by Zito.  Brown's conclusion in his summative evaluation report dated May 27, 1998, was the same.

Because Brown rated Spangler unsatisfactory and, therefore, Spangler failed to complete the remediation plan with a satisfactory or better rating, the Board passed a resolution on June 18, 1998, to dismiss Spangler.  It adopted a notice of charges as the reason for the dismissal, setting forth the following 17 charges: 

"(1) Your in-class instruction frequently fails to correspond to teacher lesson plans;  (2) You fail to communicate learning objectives and goals to the students during instruction; (3) You fail to properly structure the lesson by including opening and closing activities; (4) You have unaccounted time periods in your lesson plans; (5) You have left the classroom for unannounced activities, and you have left your students unsupervised during these times; (6) You fail to properly pace and limit your lessons on individual subjects to an appropriate length of time for fifth grade students; (7) You fail to use a variety of teaching methods; (8) You fail to modify your instruction to meet the individual needs of the students; (9) You fail to redirect the attention of inattentive students to the learning task; (10) You fail to properly grade your students; (11) You fail to convey accurate information to students; (12) You allow students to work outside the classroom on an unsupervised basis; (13) You fail to provide support or feedback to educationally needy students; (14) You fail to provide enrichment activities for high-achieving students; (15) You have used inappropriate physical contact with students; (16) You are often insubordinate, and you fail to act in a professional manner toward the administration, staff, and parents; (17) In the opinion of the Board of Education, you are not qualified to teach and your dismissal is in the best interests of the District.

The Board also attached to the resolution a bill of particulars in support of the charges. 

Subsequently, Spangler requested an administrative hearing pursuant to section 24-12 of the Code (105 ILCS 5/24-12 (West 1998)).  This hearing commenced on December 1, 1998, and concluded in March 1999.  Both parties presented evidence and testimony in their favor, more fully discussed below.  Following the hearing, the hearing officer, in a lengthy decision issued September 21, 1999, reversed the Board's dismissal of Spangler.  After detailing the evidence presented by both parties, the hearing officer rendered the following conclusions on each charge: (1) Failure to follow lesson plans--"Based on the evidence in the record Mr. Spangler's deviations are not a serious fault"; (2) Failure to communicate learning objectives and goals to students--"Although Mr. Spangler may be deficient on this point, it hardly appears to be so serious as to warrant an unsatisfactory rating"; (3) Failure to structure lessons by doing opening and closing activities--"This charge is closely related to the one preceding it.  In both charges Mr. Spangler is at fault but not as great as the charges would have us believe"; (4) Unaccounted periods in lesson plans--"Dr. Brown had good reason to fault Mr. Spangler on this charge"; (5) Leaving classroom with students unsupervised--"This is certainly a minor incident, Mr. Spangler's explanation makes sense"; (6) Failure to pace lessons and limit them to appropriate length--"Mr Spangler evidently realizes that his lessons are sometimes too long, maintaining that he improved as time went on, so this is a legitimate complaint"; (7) Failure to use a variety of teaching methods--"He deserves to be censured on this charge"; (8) Failure to meet the needs of individual students--"There is a mixed bag on this charge.  Mr. Spangler did meet individual needs in some instances, but failed in others.  The charge is only partly proven"; (9) Failure to redirect inattentive students to learning task--"Fifth grade students can indeed be expected to be inattentive some of the time.  We do not know whether these fifth graders goofed off more than others.  Some of Mr. Spangler's explanations may be suspect, such as saying students moved about to discard used tissue, but it is hard to fault the teacher for lack of attention, although some blame must rest with this teacher"; (10) Improper grading--"There is some basis to this charge, although all of it is not proven"; (11) Failure to convey accurate information to students--"Based on Dr. Brown's statements, this charge is sustained"; (12) Students working outside classroom unsupervised--"No preponderance of the evidence exists on most of this charge, although the purpose of the reading race is never explained"; (13) Failure to provide support to educationally needy students--"This charge is partially supported"; (14) Failure to provide enrichment activities for high-achieving students--"This charge is sustained"; (15) Inappropriate physical contact with students--"Evidence supporting Dr. Brown is convincing and backs the charges.  There is only this one incident, however, which is serious enough, but Mr. Spangler is not accused of inappropriate contact with students regularly"; (16) Insubordination and failure to act professionally towards administration, staff and parents--"Insubordination is not directly related to Mr. Spangler's teaching; (17) Not qualified to teach--"[T]his is a mixed bag."  His letters do exhibit sarcasm and hostility, but these too do not squarely bear on his ability as a teacher."  Based on all the evidence presented, the hearing officer concluded that the Board failed to show by a preponderance of the evidence that Spangler deserved an unsatisfactory rating during the remediation year, nor should he have been dismissed.

Thereafter, the Board filed a complaint for administrative review in the circuit court.  The trial court subsequently confirmed the hearing officer's decision.  This appeal followed.

ANALYSIS

The Code provides a mandatory procedure for dismissal of tenured teachers.  Section 24A-5 of the Code allows

"dismissal in accordance with Section 24-12 *** of any teacher who fails to complete any applicable remediation plan with a 'satisfactory' or better rating."  105 ILCS 5/24A-5(j) (West 1998).
(footnote: 1)
Section 24-12 of the Code provides:

"
If a dismissal or removal is sought for any other reason [other than a decrease in the number of teachers] or cause, *** the board must first approve a motion containing specific charges by a majority vote of all its members.  Written notice of such charges shall be served upon the teacher within 5 days of the adoption of the motion.  Such notice shall contain a bill of particulars.  No hearing upon the charges is required unless the teacher within 10 days after receiving notice requests in writing of the board that a hearing be scheduled, in which case the board shall schedule a hearing on those charges before a disinterested hearing officer ***.  The hearing officer shall hold a hearing and render a final decision. 

***  The hearing officer shall consider and give weight to all of the teacher's evaluations written pursuant to Article 24A.  The hearing officer shall, within 30 days from the conclusion of the hearing or closure of the record, whichever is later, make a decision as to whether or not the teacher shall be dismissed and shall give a copy of the decision to both the teacher and the school board. *** The decision of the hearing officer is final unless reviewed as provided in Section 24-16 of this Act."  
105 ILCS 5/24-12 (West 1998).

These sections provide the mandatory procedures and requirements necessary for a district to dismiss a tenured teacher.

I.  Issues As A Matter Of Law

A.  Scope of Hearing Officer's Authority

We first address the scope of the hearing officer's authority under section 24-12 of the Code because the Board contends that the hearing officer exceeded the authority extended to him under the Code by substituting his judgment for that of the Board.  Prior to August 1975, a school board was vested with the multiple functions of investigation, prosecution, and factual determination.  
Morelli v. Board of Education, Pekin Community High School District No. 303, Tazewell County
, 42 Ill. App. 3d 722, 728, 356 N.E.2d 438 (1976).  As such, the school board would issue the initial charge or determination of probable cause to remove a teacher and then ultimately adjudicate, based upon a majority vote of all board members, to dismiss the teacher.  
Board of Education of Valley View Community Unit School District No. 365U v. File
, 89 Ill. App. 3d 1132, 1134, 412 N.E.2d 1030 (1980).  Thus, it was the school board's responsibility to determine facts, weigh the evidence presented to it, and, after due consideration of matters with respect to credibility, ascertain whether there was sufficient evidence to support dismissal of a tenured teacher.  
Morelli
, 42 Ill. App. 3d at 726-27.  Importantly, the different functions of the school board, 
e.g.
, the investigative/charging function versus the adjudicative function, subsume different bases and purposes.  
Morelli
, 42 Ill. App. 3d at 728.  

Effective August 26, 1975, the legislature amended section 24-12 and placed the hearing function with an impartial hearing officer.  
Board of Education, School District No. 151, Cook County v. Illinois State Board of Education
, 154 Ill. App. 3d 375, 381, 507 N.E.2d 134 (1987); 
File
, 
89 Ill. App. 3d at 1135.  The school board now possesses only an investigatory/charging function.  As such, the board makes the initial determination whether there are grounds for dismissal.  
Board of Education of Round Lake Area Schools, Community Unit School District No. 116 v. State Board of Education
, 292 Ill. App. 3d 101, 110, 685 N.E.2d 412 (1997).  When the board adopts charges to dismiss a teacher, it "sets the dismissal process in motion."  
Combs v. Board of Education of Avon Center School District No. 47
, 147 Ill. App. 3d 1092, 1096, 498 N.E.2d 806 (1986).  In other words, although the board still possesses the power to dismiss a teacher, the procedures by which the dismissal is accomplished is governed by the requirements of section 24-12.  
File
, 89 Ill. App. 3d at 1135.  

Despite the above-referenced amendment, the Board argues that the hearing officer has no authority to evaluate the seriousness or gravity of the charges when ascertaining whether the Board had met its burden of proving that an unsatisfactory rating was justified.  Rather, according to the Board, the hearing officer can only determine whether the Board had proven, by a preponderance of the evidence, the charges alleged.  We disagree based on the legislative purpose and comments at the time of the amendment, as well as the inherent nature of the proceedings contemplated and authorized by the legislature.

The legislature's comments made at the time the amendment was being debated demonstrate that it was the legislature's intent to give full and total authority to the hearing officer to make the ultimate decision and determination as to dismissal.  See, 
e.g.
, 79th Ill. Gen. Assem., Senate Proceedings, May 13, 1975, at 30 (statements of Senator Glass) ("The bill *** would create a hearing officer who would have the power, after a board of education has discharged a teacher, *** to hold a hearing and, in effect, reverse the board of education"); 79th Ill. Gen. Assem., Senate Proceedings, May 22, 1975, at 153-54 (statements of Senator Glass) (this bill "is an attempt to take away from the local school boards the authority to discharge a teacher ***[,] the local board can discharge a teacher, but then the hearing officer holds the hearing and can overrule the board," this bill is "taking away power from the local board ***.  This is just another step in...in reducing power of our local authorities"); 79th Ill. Gen. Assem., Senate Proceedings, May 22, 1975, at 154 (statements of Senator Fawell) ("we would be taking from our local boards of education the right to make a very basic decision in regard to the dismissal of a tenured teacher"); 79th Ill. Gen. Assem., Senate Proceedings, May 22, 1975, at 155-56 (statements of Senator Fawell) (the amendment "will take from the board the discretion in regard to the dismissal of a tenure[d] teacher"); 79th Ill. Gen. Assem., Senate Proceedings, May 22, 1975, at 158 (statements of Senator Bruce) ("That dismissal, however, is subject to review, the very basic system of justice we have is that decisions are subject to impartial third party review, and that's what this bill provides for"); 79th Ill. Gen. Assem., House Proceedings, June 26, 1975, at 325 (statements of Representative Jaffe) ("This is merely a matter of procedural due process").  The rationale for the amendment was based on the "potential for abuse present where a local board of education itself decides whether it had just cause to remove a tenured teacher from its employment," which abuse "could be eliminated by replacing the local board with an impartial hearing officer."  
File
, 89 Ill. App. 3d at 1135.  Accordingly, the purpose of the amendment was to "avoid inequities which may result from a school board hearing and deciding a case in which they had already made an initial decision to discipline the teacher, having passed a motion containing specific charges against the teacher.  [Citation.]  A school board can not be antagonist and judge and still provide due process to the teacher."  
Craddock v. Board of Education of Annawan Community Unit School District, No. 226 of Henry County
, 76 Ill. App. 3d 43, 45, 391 N.E.2d 1059 (1979).  

These comments and purposes show an intent that 
all issues
 inherent to the dismissal determination and discretion in evaluating the issues were to be made by the hearing officer, 
i.e., 
not only whether the Board had proven the alleged charges, but also, whether the charges were sufficiently grave to ultimately justify dismissal.  See 
Powell v. Board of Education of City of Peoria, District 150
, 189 Ill. App. 3d 802, 807, 545 N.E.2d 767 (1989) ("a reading of section 24-12 as amended, reflects the legislature's intent to remove from the jurisdiction of local boards the ultimate responsibility on a termination decision following remediation to a disinterested hearing officer").  
If the legislature intended to leave any discretion or determination with the local board, it clearly would have said so.  It did not.  Rather, the legislature utilized the term "final decision" with reference to the hearing officer's determination.  A "final decision" is "[o]ne which leaves nothing open to further dispute and which sets at rest [a] cause of action between parties.  *** One which settles rights of parties respecting the subject-matter of the suit and which concludes them until it is reversed or set aside."  Black's Law Dictionary 567 (5th ed. 1979).  "Final" is defined as "[l]ast; conclusive; decisive; definitive; terminated; completed."  Black's Law Dictionary at 567.  Clearly, if the hearing officer is to render the final decision, he must be afforded the opportunity to evaluate all issues, weigh the evidence, and decide whether the charges are sufficiently grave to warrant dismissal.  Moreover, if any discretion had been left with the school board to ultimately determine any of the factors or issues relevant to the dismissal determination, the opposition to the amendment would not have been so extensive.  See, 
e.g.
, 79th Ill. Gen. Assem., Senate Proceedings, May  22, 1975, at 153-54 (statements of Senator Glass); 79th Ill. Gen. Assem., Senate Proceedings, May  22, 1975, at 154, 155-56 (statements of Senator Fawell); 79th Ill. Gen. Assem., Senate Proceedings, May  22, 1975, at 157-58 (statements of Senator Shapiro) (comments of those opposed to the bill).  See also 79th Ill. Gen. Assem., Senate Proceedings, May 22, 1975, at 158 (vote 31 ayes, 19 nays).  Lastly, the legislature clearly concluded that local boards were not always disinterested nor impartial and, therefore, were unable to afford the necessary process required prior to dismissal of a tenured teacher.  Thus, the legislature deemed a need for an impartial hearing officer.

Accordingly, the legislative comments and purposes, as well as the statutory language itself, indicate that the hearing officer possesses the authority to decide all issues with respect to a dismissal decision, including the gravity of the charges.  In giving the hearing officer authority, we conclude that the legislature contemplated giving him full authority over the decision. 

Additionally, we believe that the inherent nature of the proceedings authorized by the legislature manifest that the hearing officer has authority to evaluate the gravity of the charges.  Because a tenured teacher has a property interest in continued employment that is protected by principles of due process (
Round Lake Area Schools
, 292 Ill. App. 3d at 113), the legislature has provided this due process by allowing a hearing before an impartial hearing officer.  The administrative proceedings before the hearing officer, which are quasi-judicial in nature, are governed by fundamental principles and requirements of due process.  
Round Lake Area Schools
, 292 Ill. App. 3d at 113.  A "hearing" is a "[p]roceeding of relative formality (though generally less formal than a trial), generally public, with definite issues of fact or of law to be tried, in which witnesses are heard and parties proceeded against have the right to be heard, and is much the same as a trial and may terminate in a final order."  Black's Law Dictionary at 649.  The hearing before a hearing officer under the section 24-12 provision is strongly akin to the dictates and commands of an actual trial.  The hearing is public (23 Ill. Admin. Code §51.60(a) (1996)) and both parties are afforded a right to counsel (23 Ill. Admin. Code §51.60(b) (1996)).  Both parties are allowed to make opening statements (23 Ill. Admin. Code §51.60(c)(2) (1996)), and the school board presents its evidence first (23 Ill. Admin. Code §51.60(c)(3) (1996)).  Both parties are given the opportunity to cross-examine witnesses, offer evidence, and present a defense or rebuttal.  23 Ill. Admin. Code §51.60(c)(4) (1996).  All testimony presented must be under oath.  23 Ill. Admin. Code §51.60(c)(5) (1996).  In addition, the hearing officer may issue subpoenas to witnesses or for documents (23 Ill. Admin. Code §51.60(c)(6) (1996)), and must ensure that a report of proceedings is made (23 Ill. Admin. Code §51.60(c)(7) (1996)).  The Illinois Administrative Code further provides that the hearing must "afford full and equal opportunity to all parties for presentation of relevant proof."  23 Ill. Admin. Code §51.60(c)(12) (1996).  Following the presentation of evidence, both parties are accorded the right to present a closing argument (23 Ill. Admin. Code §51.60(c)(13) (1996)), and the hearing is not closed until all of the evidence presented at the hearing is submitted to the hearing officer (23 Ill. Admin. Code §51.60(c)(14) (1996)).  The hearing officer is then required to render a decision based on the "relevancy and materiality of the evidence offered" (23 Ill. Admin. Code §51.60(d)(2) (1996)),  deciding whether or not the teacher shall be dismissed (23 Ill. Admin. Code §51.70(a) (1996)), specifically in the instant case, whether the Board proved by a preponderance of the evidence that Spangler "failed to complete the remediation plan with a satisfactory or better rating" (
Davis v. Board of Education of the City of Chicago
, 276 Ill. App. 3d 693, 697, 659 N.E.2d 86 (1995)), which is a final decision unless reversed under the Administrative Review Law (23 Ill. Admin. Code §51.70(d) (1996)).

Because the hearing officer's duty is to decide whether the teacher should be dismissed, he is required to make an independent finding that the evidence warrants dismissal (
Combs
, 147 Ill. App. 3d at 1100), and must determine the facts and formulate the legal issues presented to him (
Friesel v. Board of Education of Medinah School District, District No. 11, Du Page County
, 79 Ill. App. 3d 460, 464, 398 N.E.2d 637 (1979)).  The hearing officer acts as the factfinder and "has the responsibility to hear the testimony of witnesses, to determine their credibility and the weight to be given to the testimony of each witness and then to draw reasonable inferences from all evidence produced in support of the charges against the accused."  
Hall v. Board of Education of the City of Chicago
, 227 Ill. App. 3d 560, 574, 592 N.E.2d 245 (1992).  Dismissal proceedings before the hearing officer are 
de novo
.  
Board of Education of the City of Chicago v. Harris
, 218 Ill. App. 3d 1017, 1024, 578 N.E.2d 1244 (1991); 
Shreve v. Board of Education of Mount Vernon High School District No. 201
, 309 Ill. App. 3d 670, 676, 722 N.E.2d 1181 (1999).  "
De novo
" is defined as "[a]new; afresh" and "
de novo
 trial" is defined as "[t]rying a matter anew; the same as if it had not been heard before and as if no decision had bene previously rendered."  Black's Law Dictionary at 392.  By the definition of 
de novo
 alone, it is abundantly evident that the hearing officer possesses the authority to evaluate the gravity of the charges.  Specifically, he is to review the matter "as if no decision had been previously" made.  If the Board's decision with respect to the gravity of the charges were not subject to review, the hearing officer would lack the ability to perform a 
de novo
 review and render the final decision.

As noted above, the function of investigation/charging is distinct from the function of adjudication.  The hearing officer takes and hears evidence (adjudication), while the school board simply investigates and gathers evidence (investigation).  "Investigate" means "to trace or track; to search into; to examine and inquire into with care and accuracy; *** examination."  Black's Law Dictionary at 740.  "Adjudicate" or "adjudge" means "to decide *** [and] [i]mplies a judicial determination."  Black's Law Dictionary at 39.  The legislature clearly left only one function with the local board, that of investigation and charging.  The adjudicatory function, and all matters attendant thereto, was placed with the hearing officer.  Additionally, because only one ultimate decision can be had and the legislature has determined that that is the hearing officer's decision, whose decision is final, the dismissal of a tenured teacher occurs only when the hearing officer renders his or her decision.  
Combs
, 147 Ill. App. 3d at 1099.  Stated another way, a motion for dismissal by the board does not itself constitute an order of dismissal where a teacher elects his right to a hearing; no dismissal occurs until the hearing officer renders his or her decision.  
Massie v. East St. Louis School District No. 189
, 203 Ill. App. 3d 965, 969-70, 561 N.E.2d 246 (1990).  

The Board repeatedly stresses that the instant proceeding resulted from an Article 24A dismissal (dismissal following a remediation plan), which, according to the Board, employs a different scheme than a non-Article 24A dismissal.  The Board relies upon 
Davis
 in support of its argument.  

In 
Davis
, the plaintiff teacher was terminated after he failed to receive a satisfactory or better rating following a remediation plan.  
Davis
, 276 Ill. App. 3d at 695.  Following an administrative hearing, the hearing officer concluded that sufficient cause existed to dismiss the plaintiff because the board had proven 9 of the 10 charges levied against the plaintiff.  
Davis
, 276 Ill. App. 3d at 695.  The circuit court confirmed the hearing officer's decision.  
Davis
, 276 Ill. App. 3d at 695.  On appeal, the plaintiff first argued that the hearing officer "applied the wrong legal standard by improperly framing the issue as whether the Board deemed [the plaintiff's] performance under the remediation plan to be unsatisfactory."  
Davis
, 276 Ill. App. 3d at 695.  According to the plaintiff, the hearing officer, not the school board, must make this determination.  
Davis
, 276 Ill. App. 3d at 696.  The 
Davis
 court did not answer the question as posed by the plaintiff, but instead stated that the hearing officer, not the board, had authority to determine whether to 
extend the remediation period
.  
Davis
, 276 Ill. App. 3d at 696.  The 
Davis
 court also rejected the plaintiff's contention that the hearing officer was required to find that the plaintiff's conduct was irremediable in order to sustain the charges, finding that section 24A-5(j) was applicable and, accordingly, the court was required to look to section 34-85,
(footnote: 2) which provides that a tenured teacher may not be dismissed except for cause.  
Davis
, 276 Ill. App. 3d at 696-97.  The 
Davis
 court then concluded that "the proper inquiry before the hearing officer was whether [the plaintiff] failed to complete the remediation plan with a satisfactory or better rating, constituting cause for dismissal."  
Davis
, 276 Ill. App. 3d at 696.  After reviewing the evidence presented to the hearing officer, the court further concluded that the hearing officer's finding, that sufficient cause existed for his termination, was supported by the record, 
i.e.
, the record "support[ed] the hearing officer's conclusion that [the plaintiff's] performance was unacceptable."  
Davis
, 276 Ill. App. 3d at 697.

Davis
 does not particularly aid the Board, nor does it control the outcome in the instant case.  While we agree that 
Davis
 stated that the scheme under Article 24A was different, the scheme is different only in some respects.  Specifically, the hearing officer need not make a finding of irremediability prior to sustaining charges.  However, the procedures employed to effectuate a dismissal, specifically those procedures under section 24-12, are not different.  The Board ignores the fact that section 24A-5(j) specifically states that any dismissal under Article 24A must be in accord with section 24-12.  As such, the scheme is not different in this important and relevant respect.  Additionally, while cause may be defined differently under Article 24A, this begs the question.  The definition of cause is irrelevant since an unsatisfactory rating following a remediation plan constitutes cause.  See 
Davis
, 276 Ill. App. 3d at 697.  However, the hearing officer must still nonetheless determine if the unsatisfactory rating is warranted or justified following the presentation of evidence to him.  We also disagree with the Board that because the deficiencies in 
Davis
 were similar to the deficiencies in the instant case, and those deficiencies warranted dismissal, 
that the hearing officer here was required to dismiss Spangler.  Each case before a hearing officer is based on its own particular facts and circumstances.  Therefore, reliance on other cases, where the facts are not identical, is neither justified nor proper.   Lastly, and most importantly, 
Davis
 did not address the issue presented to this court: whether the hearing officer can evaluate the gravity of the charges in rendering his decision.  Accordingly, 
Davis
 does not control our resolution of the case here.

Based on the foregoing, we conclude that the hearing officer did not err as a matter of law in evaluating the seriousness or gravity of the charges in reaching his conclusion.  The hearing officer has a duty to determine whether an unsatisfactory rating was warranted based on the evidence before him.  This includes a determination of the seriousness of the offense because even if the Board had proven 20 charges, and none were serious or none related to Spangler's ability as a teacher, dismissal would not be proper.  However, under the Board's interpretation, dismissal would nonetheless be required.  This is not what the Code commands.

B.  Charges Proven Warrants Dismissal

The Board next contends that the hearing officer erred in reversing its termination decision as a matter of law because the hearing officer found that it proved six of the charges against Spangler, yet concluded that Spangler should not be dismissed.  According to the Board, because the hearing officer concluded that six charges had been proven, he was required as a matter of law to dismiss Spangler.  

The six relevant charges are numbers 4, 6, 7, 11, 14, and 15, and the hearing officer's conclusion with respect to each is detailed above.  After reviewing all of the charges and evidence presented, the hearing officer concluded that the Board had not established by a preponderance of the evidence that Spangler should have been rated unsatisfactory, nor should he have been dismissed.

Contrary to the Board's argument, the hearing officer did not state or necessarily conclude that all six charges were proven.  Rather, he concluded that two of the charges were "sustained."  We can presume, although the hearing officer did not explicitly so state, that he meant that the Board proved the charges by a preponderance of the evidence.  The rest of the hearing officer's conclusions are somewhat cryptic and it cannot necessarily be concluded from them that he found they were proven by a preponderance of the evidence.  The question nevertheless remains whether the hearing officer was required as a matter of law, because he found two charges proven, to find that Spangler was properly rated unsatisfactory.  In other words, if at least one charge is proven, must dismissal result automatically?  The Board has not cited to any authority holding that if one, of any number of charges, is proven, the hearing officer must conclude, as a matter of law, that completion of the remediation plan was unsatisfactory.  Accordingly, we find that the Board has waived review of this issue by failing to cite to any authority in support of its argument.  
Carr v. Cook County Hospital
, 323 Ill. App. 3d 184, 189, 751 N.E.2d 119 (2001).

In any event, if such a conclusion were required, it would lead to absurd results.  As noted above, if one charge was found to be proven by a preponderance of the evidence and that charge was minor or unrelated to the teacher's ability to perform his job functions, the rule urged by the Board would nonetheless require the teacher's dismissal.  We do not agree that this is what the legislature contemplated in promulgating the Code.  Accordingly, we reject the Board's argument that the hearing officer erred as a matter of law in failing to uphold the dismissal based on the fact that a certain number of charges were proven.

[The following material is nonpublishable under Supreme Court Rule 23].

[The preceding material is nonpublishable under Supreme Court Rule 23].

CONCLUSION

For the reasons stated, we affirm the judgment of the circuit court of Cook County.

Affirmed.

GORDON and McBRIDE, JJ., concur.

FOOTNOTES
1:
See also section 10-22.4 of the Code, which provides the school district with the authority

"[t]
o dismiss a teacher for incompetency, cruelty, negligence, immorality or other sufficient cause, 
to dismiss any teacher who fails to complete a 1-year remediation plan with a 'satisfactory' or better rating
 *** subject, however, to the provisions of Sections 24-10 to 24-15, inclusive."  (Emphasis added.)  
105 ILCS 5/10-22.4 (West 1998).

2:
This section is similar to section 24-12, although it relates to cities over 500,000.